En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Hon. Charlie Rodríguez, Presidente, Senado de Puerto Rico; Hon. Sergio Peña Clos, como Presidente de la Comisión Especial sobre el Cerro Maravilla del Senado de Puerto Rico y la Comisión Especial<br>    Peticionarios | Certiorari<br><br>99 TSPR 104 |

Número del Caso: CC-1997-0735

Abogados de la Parte Peticionaria: Lcdo. Eliezer Aldarondo Ortíz
                                   Lcdo. Claudio Aliff Ortíz
                                   Lcdo. Pablo Landrau Pirazzi

Abogados de la Parte Recurrida:    Lcdo. Marcos A. Ramírez Lavandero
                                   Lcdo. Eduardo A. Vera Ramírez
                                   Lcda. Norma Cottí Cruz

Tribunal de Instancia, Sala Superior de San Juan

Juez del Tribunal de Primera Instancia: Hon. Zadette Bajandas Vélez

Tribunal de Circuito de Apelaciones, Circuito Regional I San Juan Panel III

Juez Ponente: Hon. Ramos Buonomo

Fecha: 6/30/1999

Materia: Citación de Testigos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Hon. Charlie Rodríguez,
Presidente, Senado de Puerto
Rico; Hon. Sergio Peña Clós
como Presidente de la                    CC-97-735      Certiorari
Comisión Especial sobre el
Cerro Maravilla del Senado
de Puerto Rico y la Comisión
Especial

    Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Negrón García


San Juan, Puerto Rico, a 30 de junio de 1999

    "En momentos de pasión política, la falta de honradez o la venganza son motivaciones fácilmente atribuibles a la conducta legislativa. Sin embargo, los tribunales no son el lugar adecuado para estas controversias. Corresponde a la autodisciplina de los legisladores y a los electores, en última instancia, desalentar o corregir tales abusos." Tenney v. Brandhove, 341 U.S. 367, 377-378 (1951). (Traducción nuestra).

                                I

    La recta adjudicación de las controversias en este recurso ameritan un escrupuloso recuento de sus antecedentes.

El 30 de enero de **1997** el Senado de Puerto Rico aprobó la Resolución Núm. 18 y creó la <u>Comisión Especial sobre El Cerro Maravilla</u> con la encomienda de continuar investigando posibles irregularidades o actuaciones ilegales o impropias en el manejo de la pesquisa senatorial sobre los sucesos del Cerro Maravilla, efectuada para los años de 1981 a 1992, incluso de su Oficina del Fiscal Especial Independiente.[1]

Conforme la referida Resolución, la investigación ordenada cumple tres propósitos: "primero, legislar para evitar en un futuro la repetición de irregularidades o actuaciones ilegales o impropias que lesionen la integridad de los procesos investigativos del Senado; segundo, iniciar los procedimientos que correspondan contra quienes hubiesen incurrido, tolerado o permitido actuaciones impropias o ilegales en perjuicio de terceras personas; y tercero, informar al pueblo sobre sus hallazgos." El 7 de febrero la Comisión Especial aprobó su Reglamento para regir la investigación.[2]

El 17 de abril, el Presidente de la Comisión Especial, Hon. Sergio Peña Clós, expidió citación ("subpoena") dirigida al Lcdo. Héctor Rivera Cruz requiriéndole comparecer a vista pública el 30 de abril. La citación fue diligenciada el 22 de abril con copia de la Resolución Núm. 18 y del Reglamento de la Comisión Especial. Rivera Cruz fue protagonista principal y se desempeñó como Oficial Investigador durante la pesquisa del Senado en los años 1981 a 1984, sobre los sucesos del Cerro Maravilla. Posteriormente, el 28 de abril, Peña Clós le notificó la suspensión de esa vista y su transferencia para el 15 de marzo, a las 10:00 A.M.

---

[1] La Resolución Núm. 18 concedió a la Comisión hasta el 15 de junio de 1997 para informar hallazgos y recomendaciones. Posteriormente dicha Resolución fue enmendada por las Resoluciones del Senado Núm. 593 de 6 de julio de 1997; la Núm. 779 de 26 de agosto de 1997; la Núm. 889 de 29 de septiembre de 1997; y la Núm. 1045 de 17 de noviembre de 1997, **a los fines de extender el plazo para rendir el Informe de la Investigación hasta el 12 de enero de 1998, o en la alternativa, una semana después que comparezca el último testigo.**

[2] Desde el 16 de enero, el Senado había aprobado su Reglamento, en cuyo Capítulo IV estableció las Reglas Uniformes para Regir Investigaciones Conducidas por las Comisiones Permanentes o Especiales.

El 14 de marzo, Rivera Cruz comunicó por escrito que no podía comparecer debido a compromisos profesionales previos. Al otro día, Peña Clós expidió nueva citación requiriéndole asistir el 22 de marzo. Fue diligenciada el 19 de marzo.

Un día antes de la vista, mediante comunicación fechada 21 de marzo dirigida a Peña Clós, Rivera Cruz informó no tener en su poder documento alguno relacionado con los sucesos del Cerro Maravilla y **expuso varias razones por las cuales no asistiría.** En esencia, cuestionó la facultad del Presidente de la Comisión y Senado para citarle e investigar su participación y trabajo relacionado con la pesquisa del Cerro Maravilla durante los años 1981 a 1992. A esos efectos, indicó que la citación "es una totalmente inválida e improcedente en Derecho, que tiene ribetes de persecución política y que atenta contra principios fundamentales de equidad, justicia sustancial y buen gobierno".[3] El mismo día, Rivera Cruz presentó ante nos la queja (AB-97-68) contra el Presidente de la Comisión, Peña Clós, como abogado, por alegadas violaciones a los Cánones de Etica Profesional. **Luego de evaluada, subsiguientemente la archivamos mediante Resolución de 13 de julio.**

Ante la negativa de Rivera Cruz a comparecer a la vista pública del 22 de mayo, Peña Clós leyó la comunicación, hizo varias observaciones dirigidas a refutar las razones aducidas por éste para no comparecer y verbalizó comentarios despectivos hacia su persona. Se refirió a Rivera Cruz como **"El Enano", "rábula" (abogado indocto, charlatán y vocinglero.** Diccionario de la Real Academia Española, vigésima primera edición, Madrid, 1992). Lo acusó de ocultar evidencia que no apoyaba su teoría durante la pasada investigación senatorial e imputó responsabilidad por la muerte del ex-agente encubierto,

---

[3] Véase copia de comunicación de Rivera Cruz al Presidente de la Comisión Especial fechada 21 de mayo. (Recurso CC-97-479, Héctor Rivera Cruz v. Hon. Charlie Rodríguez, Presidente del Senado de Puerto Rico y otros, págs. 64-68.

Alejandro González Malavé. (Transcripción oficial Vista Pública del 22 de mayo, págs. 106-142, Apéndice). Por su incomparecencia, la Comisión Especial acordó solicitar al Presidente del Senado, Hon. Charlie Rodríguez, autorización para recurrir al Tribunal de Primera Instancia, Sala Superior de San Juan, para que se le ordenara comparecer so pena de desacato. La autorización fue firmada por el Presidente del Senado y el Presidente de la Comisión Especial, el 28 de marzo.

El 7 de julio, el Senado, a través de su representación legal, acudió al referido Tribunal. En virtud de la facultad conferida por el Art. 34A del Código Político, 2 L.P.R.A. 1549, incisos 1 y 2, según enmendados, solicitó orden requiriendo a Rivera Cruz comparecer el **10 de julio.**

El 9 de julio, dicho foro (Hon. Lourdes Velázquez Cajigas), así lo ordenó, bajo apercibimiento de desacato. Ese mismo día, Rivera Cruz informó, por conducto de sus abogados, que compromisos profesionales previos le imposibilitaban asistir y tenía disponibles los días 17, 29, 30 y 31 de julio. Indicó además, que así lo había notificado a la Comisión Especial a través de la Oficina del Investigador.

El 10 de julio, la Comisión Especial reanudó sus trabajos. Tras discutir la incomparecencia de Rivera Cruz, **acogió sus excusas y conforme su propia propuesta, acordó citarlo directamente**, esto es, por sus propios mecanismos, para los días 29, 30 y 31 de julio. El 16 de julio se diligenció esta citación.[4]

Así las cosas, el 29 de julio, Rivera Cruz honró la citación, compareció y declaró ante la Comisión Especial. **Se encontraban presentes en el salón de sesiones Julio César Andrades, Alejo Maldonado y Víctor Franco, personas encausadas y convictas criminalmente durante la incumbencia de Rivera Cruz como Secretario de Justicia. Al percatarse Rivera Cruz de que estaban sentados detrás de él, sin que previamente se le advirtiera, planteó que su seguridad estaba en**

---

[4] El 22 de julio, el Tribunal declaró académica la "Moción Informativa" de Rivera Cruz.

**peligro, lo cual le impedía deponer. El Senador de la minoría del Partido Popular Democrático, Hon. Bruno Ramos señaló que no se podían utilizar como testigos de confrontación esas tres (3) personas, pues no se había cumplido con el requisito reglamentario de notificar su comparecencia con tres (3) días de antelación.[5] Andrades, Maldonado y Franco fueron desalojados del salón de audiencias por órdenes del Presidente de la Comisión Especial.[6]**

Rivera Cruz declaró el día 30 de julio y compareció también el 31 de julio.[7] Este último día, el Senador Bruno Ramos le indicó al Presidente de la Comisión que en el salón de sesiones se encontraba nuevamente Franco y le preocupaba la seguridad del deponente Rivera Cruz. Luego de aceptar que el propósito era confrontarlo, Peña Clós ordenó a Franco salir del salón de audiencias. Resuelto tal incidente, el Investigador de la mayoría parlamentaria, Lcdo. Michael Corona, inició el interrogatorio. **Al formular la primera pregunta, Rivera Cruz indicó que deseaba explicar las razones por las cuales no iba a contestarla.** El Presidente de la Comisión no lo permitió y ordenó contestar. Rivera Cruz insistió en explicar las razones, pero se le requirió nuevamente contestar. Luego de intentar dirigirse a la Comisión Especial sin que se le permitiera, –**lo cual provocó un agrio intercambio de palabras entre el Presidente Peña Clós y Rivera Cruz**–, **este último abandonó la audiencia sin concluir su declaración, no sin**

---

[5] Sección 14.4, Reglamento del Senado antes aludido.

[6] No se sometió ante nos copia de las transcripciones oficiales de las vistas públicas celebradas por la Comisión Especial los días 29 y 30 de julio de 1997. Los datos ofrecidos surgen del testimonio del Oficial Investigador de la minoría del Partido Popular Democrático, Lcdo. Moisés Abréu, según reseñado en la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan (Hon. Velázquez Cajigas) dictada el 25 de agosto de 1997. También se hace alusión al incidente acaecido el día **29 de julio de 1997** en la transcripción oficial de la vista pública celebrada posteriormente el 31 de julio de 1997 por la Comisión Especial, copia de la cual forma parte de los autos originales del caso que nos fueran remitidos por el tribunal apelativo.

[7] Véase copia de la transcripción oficial de vista pública celebrada por la Comisión Especial el 31 de julio de 1997 a las págs. 91 a 136 del apéndice del recurso CC-98-479, Héctor Rivera Cruz v. Hon. Charlie Rodríguez, Presidente del Senado de Puerto Rico y otros.

**antes entregar, a solicitud de la Comisión, una ponencia que había llevado.**[8]

Ante esta situación, la Comisión Especial determinó acudir al Tribunal de Primera Instancia para solicitar que se le encontrara incurso en desacato. Dicho foro, el 13 de agosto requirió a Rivera Cruz mostrar causa por la cual no debía ser declarado incurso en desacato por incumplir su orden del 9 de julio.

El 18 de agosto, Rivera Cruz solicitó que para esa vista se citaran al Presidente del Senado, Lcdo. Rodríguez, al Presidente de la Comisión Especial, Peña Clós, los Oficiales Investigadores de la Comisión, Lcdos. Corona y Abréu y los ex-investigadores del Senado, Lcdos. Nilka Marrero y César Mercado. Al día siguiente, 19 de agosto, pidió la transcripción de varias audiencias de la Comisión Especial y la producción de numerosos documentos.

El 20 de agosto el Senado se opuso. Ese mismo día el Tribunal declaró sin lugar la solicitud de producción de documentos y accedió a la citación de testigos, condicionada a que previamente se estableciera la pertinencia de sus testimonios. En su resolución hizo constar que en sus escritos, Rivera Cruz no había expuesto las defensas que pretendía plantear, lo cual le impedía determinar la pertinencia de lo requerido. No obstante, determinó citar a las personas nombradas para evitar la suspensión de la vista pautada. Rivera Cruz pidió reconsideración. El 21 de agosto, el Senado se opuso y pidió se dejara sin efecto la citación de testigos. Asimismo, radicó ante el Tribunal de Circuito de Apelaciones, una "Moción Urgente en Auxilio de Jurisdicción" solicitando se dejaran sin efecto las citaciones autorizadas por Instancia.[9]

---

[8] Véase copia de "Declaración del Lcdo. Héctor Rivera Cruz Durante Comparecencia ante la Comisión Especial del Senado sobre el Cerro Maravilla", fechada 31 de julio de 1997, a las págs. 166 a 168 del apéndice del recurso CC-97-479, Héctor Rivera Cruz v. Hon. Charlie Rodríguez, Presidente del Senado de Puerto Rico y otros.

[9] Dicha moción en auxilio de jurisdicción fue declarada **sin lugar** por el Circuito, mediante Resolución vía telefónica el 23 de agosto.

El 22 de agosto se celebró la vista de mostrar causa ante el Tribunal. El Tribunal solicitó a Rivera Cruz que presentara evidencia sobre la pertinencia del los testigos citados. **Su representación legal señaló que tal pertinencia se establecería mediante sus propios testimonios y se negó a hacer oferta de prueba para establecerla.** El Tribunal declaró sin lugar una moción de intervención de la minoría senatorial del Partido Popular Democrático y la moción de reconsideración de Rivera Cruz. Reiteró su criterio en cuanto a la citación de testigos. En esencia, en la vista, Rivera Cruz planteó que técnicamente no podía declarársele incurso en desacato ya que no incumplió ni violó la orden del 9 de julio, pues la Comisión Especial lo excusó de comparecer el 10 de julio según ordenado y lo citó para los días 29 al 31 de julio de 1997. Además, adujo que no fue citado a comparecer con cinco (5) días de anticipación a la audiencia pública según exigido por el Reglamento del Senado.[10] **Finalmente, señaló que las vistas no respondían a un fin legislativo legítimo y estuvo justificado en retirarse el 31 de julio debido a los insultos de que fue objeto.** Como único testigo, presentó al Lcdo. Abréu, Oficial Investigador para la minoría del P.P.D. Este declaró que estuvo presente en la audiencia del 10 de julio en que se discutió la incomparecencia de Rivera Cruz. Indicó, que en dicha ocasión, la Comisión Especial acogió como razonables sus excusas y que fue a solicitud del Senador del P.P.D., que se aceptaron las fechas sugeridas para comparecer por Rivera Cruz. Se descartó recurrir nuevamente ante el Tribunal, **ya que no se oponía a comparecer.** Sobre otros extremos, reseñó los incidentes acaecidos en la audiencia celebrada el 31 de julio que culminaron con la salida abrupta de Rivera Cruz de la vista pública sin que finalizara su interrogatorio. Sometido el caso, el 25 de agosto, el Tribunal, en corte abierta, previa citación de las partes, encontró a Rivera Cruz incurso en desacato civil y ordenó su encarcelación hasta que

---

[10] Sec. 14.5(1) del Reglamento del Senado.

compareciera y declarara ante la Comisión Especial. **Tras dialogar las partes, Rivera Cruz accedió a comparecer ante la Comisión Especial el día 27 de agosto de 1997, emitiendo orden el Tribunal a tales efectos.**

**No obstante ese compromiso**, al día siguiente, el 26 de agosto Rivera Cruz apeló al Tribunal de Circuito de Apelaciones. Simultáneamente solicitó remedio en Auxilio de Jurisdicción y Transcripción de la Prueba Oral. Ese mismo día, 26 de agosto, el Circuito de Apelaciones paralizó la orden y sentencia dictada. Concedió término a las partes para someter alegatos simultáneos.

No conforme, el Senado cuestionó ante nos esa paralización, (CC-97-479). El 29 de agosto denegamos el recurso con vista al "trámite ante el Tribunal de Apelaciones, y **el carácter prioritario** dimanante de su Resolución del 26 de agosto...".

El 30 de septiembre, el Circuito de Apelaciones revocó la sentencia de instancia debido a la ausencia de orden judicial alguna que **específicamente** obligara a Rivera Cruz a comparecer a la Comisión Especial los días 29, 30 y 31 de julio de 1997. Determinó que la **única orden judicial** fue exclusivamente para el 10 de julio, pero la Comisión Especial pospuso dicha comparecencia y lo citó nuevamente, sin obtener nueva orden judicial. Dicha sentencia fue notificada y copia archivada en autos el 1 de octubre.

Poco después, el 2 de octubre el Presidente de la Comisión, nuevamente expidió citación a Rivera Cruz requiriéndole comparecer a vista pública los días **14 al 16 de octubre**; citación diligenciada el 8 de octubre.

El 14 de octubre, Rivera Cruz le comunicó las razones por las cuales no asistiría. Otra vez, el 14 de octubre, la Comisión Especial resolvió solicitar al Presidente del Senado comparecer ante los tribunales para citarlo. Dicha resolución fue aprobada el 15 de octubre.

El 20 de octubre, la representación legal del Senado acudió al Tribunal de Primera Instancia, para que, en virtud del Artículo 34-A

del Código Político, se le requiriera comparecer los días **28, 29, 30 y 31 de octubre**. El 21 de julio, en atención a dicha solicitud, dicho foro (Hon. Pedro López Oliver), accedió.

Diligenciada la orden el 23 de octubre, el día 27, Rivera Cruz pidió se dejara sin efecto y planteó, entre otras cosas: 1) que la citación era improcedente en derecho; 2) se le estaban violando sus derechos constitucionales; 3) que la Comisión Especial estaba actuando en violación a la norma establecida en el dictamen emitido previamente por el foro apelativo; y 4) que, de cualquier manera, compromisos profesionales previamente contraídos le impedían comparecer en las fechas señaladas. Ese mismo día, el Tribunal denegó su moción. Rivera Cruz, mediante comunicación escrita informó a la Comisión Especial que no cumpliría con la orden del Tribunal para comparecer a la vista pública a celebrarse los días 28 al 31 de octubre. Debido a esa incomparecencia, la Comisión Especial, previa aprobación de resolución, compareció al Tribunal y solicitó del Tribunal lo declarara incurso en desacato civil. El 30 de octubre de 1997, el Tribunal (Hon. Zadette Bajandas Vélez) ordenó a Rivera Cruz mostrar causa por la cual no debía acceder por incumplir su orden del 21 de octubre. Fijó la vista de desacato para el 6 de noviembre.

El 3 de noviembre, Rivera Cruz presentó varias mociones a través de las cuales solicitó la desestimación del proceso, la transcripción y entrega de numerosos documentos y la citación de varios testigos **antes de que se celebrara la vista señalada.**[11] Ese mismo día, el

---

[11] Las personas que se solicitó citar **son la mismas** que fueron citadas para comparecer a la vista llevada a cabo por el incidente de desacato anterior entre las mismas partes del caso del epígrafe.

Los documentos solicitados por Rivera Cruz fueron los siguientes:

(a) Copia de todos los documentos que serán utilizados por el Senado durante la vista a celebrarse el día 6 de noviembre de 1997;

(b) Copia de las agendas de las vistas a las que fue citado el requerido;

(c) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial del día 15 de mayo de 1997;

(d) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial del día 29 de mayo de 1997;

Tribunal se negó a desestimar y citar los testigos por entender "que con la mayor probabilidad, gran parte de los hechos relevantes al incidente que se dilucidará en la vista pautada para el 6 de noviembre de 1997, debe poder ser objeto de estipulación entre las partes". En

---

(e) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial del día 10 de julio de 1997;

(f) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial durante los días 29, 30 y 31 de julio de 1997;

(g) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial durante los días 14, 15 y 16 de octubre de 1997;

(h) La transcripción completa, fiel y exacta, de las vistas de la Comisión Especial durante los días 28, 29, 30 y 31 de octubre de 1997;

(i) La transcripción completa, fiel y exacta, de todas las vistas ejecutivas celebradas por la Comisión Especial desde el día 15 de mayo de 1997, hasta el presente, y que estén relacionadas con la comparecencia del requerido ante la Comisión Especial;

(j) La transcripción completa, fiel y exacta, de las minutas, o reuniones, o vistas que dan lugar a la aprobación de la resolución del 28 de octubre de 1997, para acudir al tribunal a solicitar se ordene al recurrido a mostrar causa por no haber cumplido la Orden del 21 de octubre de 1997;

(k) Copia de todas las convocatorias, citaciones o notificaciones a los (5) miembros de la Comisión Especial sobre la celebración de la vista en que se aprobó la Resolución del 28 de octubre de 1997 para acudir al tribunal para que se ordenara al requerido a cumplir con la Orden del 21 de octubre de 1997;

(l) Copia de todas las convocatorias, citaciones o notificaciones a los cinco (5) miembros de la Comisión Especial sobre la celebración de la vista a celebrarse los días 29, 30 y 31 de julio de 1997; 14, 15 y 16 de octubre de 1997; y 28, 29, 30 y 31 de octubre de 1997;

(m) Copia de todas las citaciones expedidas por la Comisión Especial al licenciado Héctor Rivera Cruz para comparecencia ante la misma;

(n) Copia de la transcripción de cada una de las vistas a las que debía comparecer el requerido;

(o) Copia de la notificación o citación a otros testigos para que comparecieran a las vistas para las que estaba citado el requerido y el diligenciamiento correspondiente de dichas notificaciones o citaciones;

(p) Copia de la grabación en audio y en cinta videomagnetofónica de todas las vistas celebradas por la Comisión Especial a las que haya comparecido el requerido y cualquier otra en que se haya mencionado, esté relacionado o haya sido éste citado;

(q) Copia de los documentos presentados ante la Comisión Especial por el licenciado Héctor Rivera Cruz durante la vista del 22 de mayo de 1997, del 29 al 31 de julio de 1997, del 14 al 16 de octubre de 1997 y del 28 al 31 de octubre de 1997;

(r) Copia de todas las citaciones de la Comisión Especial a otras personas, distintas al requerido, que fueran citadas para los días 29, 30 y 31 de julio de 1997, 14, 15 y 16 de octubre de 1997, y 28, 29, 30 y 31 de octubre de 1997, en que se había citado por la Comisión Especial al recurrido;

(s) Copia de todos los expedientes en poder de la Comisión Especial o del investigador relacionados con el recurrido;

(t) Copia de todas las declaraciones, informes, documentos y evidencia que se hayan producido como parte de la investigación que realizó la Comisión Especial de lo Jurídico del Senado cuando el recurrido actuó como investigador en el período 1981-84;

cuanto a los documentos solicitados, el Tribunal ordenó la producción de sólo algunos por entender que "los demás documentos solicitados no resultan pertinentes al incidente específico del desacato".[12]

Inconforme, el 5 de noviembre, otra vez Rivera Cruz acudió al Tribunal de Circuito, mediante petición de _certiorari_, acompañada de una moción urgente en auxilio de jurisdicción. En síntesis, argumentó como error, la negativa al acceso a información y testigos, a su juicio

---

(u)    Copia de todas las declaraciones, informes, documentos y evidencia que se hayan producido ante la Comisión Especial durante la presente investigación o en las vistas públicas o ejecutivas en las que se haya mencionado o esté relacionado el recurrido;

(v)    Copia de todas las declaraciones, informes, documentos y evidencia que se hayan producido durante las investigaciones del Senado durante los años 1993-1996 en las comisiones correspondientes, en las que se haya mencionado o esté relacionado el recurrido;

(w)    Copia de cualquier informe o documento preliminar o final, parcial o completo o en borrador, donde cualquier comisión del Senado de Puerto Rico, que haya investigado la investigación del Cerro Maravilla desde enero de 1993 hasta el día de hoy, haya preparado o redactado, por sí o a través de algún agente, empleado, investigador o asesor o por cualquier persona en donde se haya evaluado o emitido comentarios, conclusiones o recomendaciones relacionadas con las actuaciones de la persona del recurrido;

(x)    Copia de la notificación a otros testigos para que comparecieran a las vistas para las que estaba citado el requerido.

[12] El Tribunal de Instancia ordenó a la Comisión entregar a Rivera Cruz en o antes del 5 de noviembre de 1997 los documentos que se describen a continuación:

a)    "Copia de los documentos que se utilizarán por los peticionarios para la vista del 6 de noviembre de 1997.

b)    La transcripción completa, fiel y exacta de las vistas de la Comisión Especial de los días 14, 16, 18, 28, 29, 30 y 31 de octubre de 1997.

c)    Transcripción de las minutas, reuniones y vistas que dieron lugar a la aprobación de la Resolución del 28 de octubre de 1997 para acudir al Tribunal a solicitar se ordene al requerido a mostrar causa para no haber cumplido la orden del 21 de octubre de 1997.

d)    Copia de todas las convocatorias, citaciones y notificaciones a los cinco (5) miembros de la Comisión Especial sobre la celebración de la vista en que se aprobó la resolución del 28 de octubre de 1997 para acudir al Tribunal para que se ordenara al requerido a cumplir con la orden de 21 de octubre de 1997.

e)    Copia de todas las convocatorias, citaciones y notificaciones a los cinco (5) miembros de la Comisión Especial sobre la celebración de las vistas a celebrarse los días 14, 15, 16, 28, 29, 30 y 31 de octubre de 1997.

f)    Copia de las citaciones expedidas por la Comisión Especial al licenciado Rivera Cruz para comparecer a las vistas del 14, 15, 16, 28, 29, 30 y 31 de octubre de 1997."

indispensables, para poder establecer sus defensas en la vista de desacato, lo cual implicaba una violación al debido proceso de ley. El día siguiente el foro apelativo declaró **con lugar** el auxilio de jurisdicción y, en consecuencia, paralizó los procedimientos en instancia. Además, concedió al Senado hasta el 17 de noviembre para presentar su oposición. En vez de comparecer ante dicho foro, el 12 de noviembre, el Senado nos presentó el <u>certiorari</u> (CC-97-667) acompañado de un auxilio de jurisdicción. Adujo que el foro intermedio apelativo abusó de su discreción al paralizar.

El 13 de noviembre declaramos **sin lugar** el recurso, indicando que el Senado tenía hasta el 17 de noviembre para presentar su escrito ante el Circuito de Apelaciones. Además, instruimos a dicho foro a que resolviera prioritariamente el asunto ante su consideración.[13]

El 17 de noviembre, el Senado presentó su alegato ante el Circuito. El 24 de noviembre dicho foro (Hons. Ramos Buonomo, González Román y Córdova Arone), expidió el auto y dictó sentencia. Modificó la resolución de instancia, dejando sin efecto la denegatoria del descubrimiento de prueba y la comparecencia de testigos. Devolvió el caso para que, a la brevedad posible, celebrara una vista en la que permitiera a las partes expresarse sobre la pertinencia de la prueba documental y testifical. Al así resolver, concluyó que instancia no cumplió con su obligación de darle debida consideración a la solicitud de Rivera Cruz al denegarle el descubrimiento de la prueba documental y la citación de testigos, sin considerar primero su pertinencia. Indicó además, que instancia estaba obligado a examinar la naturaleza del descubrimiento solicitado, tanto en términos de su posible pertinencia a cualquier defensa legítima que Rivera Cruz pretenda interponer, como,

---

[13] En la referida resolución, los Jueces Asociados señores Hernández Denton y Fuster Berlingeri coincidieron en decretar **no ha lugar** al recurso. Sin embargo, consignaron que no se justificaba la orden al foro apelativo para que el asunto fuese atendido con carácter prioritario, "por no existir una situación de urgencia o de preeminente interés público". El Juez Presidente, Sr. Andréu García y la Juez Asociada, Sra. Naveira de Rodón se inhibieron.

de ser necesario, en términos de posible status privilegiado de lo solicitado. Dicha sentencia fue notificada y archivada en autos copia de su notificación el mismo día de su emisión, 24 de noviembre.

El 9 de diciembre, el Senado presentó este recurso de certiorari y el 15 lo expedimos. Como único planteamiento señala:

> "Erró el Honorable Tribunal de Circuito de Apelaciones al concluir que en el caso de autos el recurrido tiene derecho a un descubrimiento de prueba tan amplio como lo permitan las Reglas de Procedimiento Civil".

Luego de varios trámites interlocutorios, con el beneficio de los alegatos de las partes, resolvemos.[14]

II

**Por imperativo decisorio y normas de justiciabilidad, abordemos primeramente el planteamiento de academicidad.**

Rivera Cruz sostiene que el recurso es académico ya que la Comisión Especial rindió, y el Senado aprobó, un informe final sobre la investigación realizada. Argumenta que ello hizo inexistente la controversia de si debe o no comparecer ante dicha Comisión Especial a prestar testimonio. **No tiene razón.**

Sabido es que un caso académico es aquel en que "se trata de obtener un fallo sobre una controversia disfrazada, **que en realidad no existe**, o una determinación de un derecho antes de que éste haya sido reclamado, o una sentencia sobre un asunto, que al dictarse, por alguna razón no podrá tener efectos prácticos..." Asociación de Periodistas v.

---

[14] A solicitud de Rivera Cruz, el 13 de marzo de 1998 le concedimos prórroga para presentar su alegato hasta el 20 de marzo. No obstante, el 18 de marzo, presentó moción de desestimación fundamentada en que el 19 de marzo de 1998, el Senado había aprobado como "final" el Informe de hallazgos y recomendaciones rendido por la Comisión Especial. Argumentó que resultaba académica cualquier controversia relacionada con su comparecencia ante dicha Comisión. El 19 de marzo, le ordenamos presentar su alegato en la fecha señalada y concedimos al Senado quince (15) días para exponer su posición en cuanto a la desestimación solicitada. Posteriormente, el 20 de marzo denegamos la desestimación del Lcdo. Rivera Cruz y, accedimos admitir como su alegato el sometido ante el Circuito de Apelaciones. El 31 de marzo el Senado cumplió aduciendo que la controversia no se había tornado académica ya que tiene considerables repercusiones en la función y facultad constitucional de las Ramas Legislativa y Judicial y, plantea una

González, 127 D.P.R. 704, 719 (1991). Federal National Mortgage Assn. v. Corchado Román, res. en 31 de marzo de 1998; E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). Si los cambios fácticos o judiciales hacen ficticia la solución del caso, convirtiéndola en una opinión consultiva, la controversia se ha tornado académica. P.P.D. v. Rosselló González, res. en 22 de diciembre de 1995; El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988); R. Serrano Geyls, Derecho Constitucional de E.U. y P.R., Vol. I, págs. 122-126 (1986). Por estas razones, al examinar la posible academicidad de un recurso, hay que evaluar los eventos anteriores, concomitantes y futuros, y determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo.[15]

**Del debate para la aprobación del Informe[16] presentado por la Comisión Especial surge inequívocamente la intención legislativa de aprobar dicho informe como uno parcial, no final**. Así, la Senadora, Hon. Lebrón Vda. de Rivera, miembro de dicha Comisión Especial, hizo constar que **la investigación no había concluido debido a que** "ante el Tribunal hay unos cuantos casos muy importantes, de evidencia que es necesaria para todavía seguir aclarando los procedimientos... Esta investigación no termina, compañeros, el Pueblo de Puerto Rico tiene derecho a saber todo lo que ocurrió allí. ...y Héctor Rivera Cruz, nuestro compañero abogado, tiene todavía mucho que informar a esta Comisión, y con todo el respeto que se me merece como compañero de profesión, tiene que comparecer y yo confío en el sano juicio de los

---

cuestión recurrente susceptible de repetición, excepción clara a la doctrina de academicidad.

[15] Como excepciones reconocidas a esta doctrina tenemos: 1) si el caso presenta cuestión recurrente o susceptible de repetirse; 2) cuando el demandado varía su comportamiento y la situación de hechos, sin visos de permanencia, para evadir la revisión judicial; y 3) el caso, aunque académico en apariencia, conlleva consecuencias colaterales. P.P.D. v. Rosselló González, supra; Asoc. de Periodistas v. González, supra; R. Serrano Geyls, ob. cit., pág. 122.

[16] Por Resolución del 6 de marzo, a los fines de evaluar el planteamiento de academicidad, requerimos al Senado que remitiese copia certificada del debate y discusión en el pleno, que precedió la aprobación del Informe de la Comisión Especial y, de cualquier resolución aprobada por dicho cuerpo a raíz de la discusión y votación del Informe aludido.

tribunales que atienden los planteamientos de este Senado para que les oblige a comparecer..." Informe Comisión Especial, T. II, pág. 468.

Más adelante, con referencia específica del asunto, su Presidente Peña Clós **aclaró** que el informe rendido para aprobación **no era final**. Señaló que "[l]a Resolución que se aprobó al inicio de este año y se aprobó el año pasado establece que esta investigación **terminará una semana después que comparezca el último deponente**, pensando en todas estas cositas que han ido surgiendo, pero el Reglamento nos autoriza a radicar un informe **parcial**... Sr. Presidente, esa Resolución –Núm. 18– es la que habla de que tendremos una semana después de que comparezca el último deponente. En vista de que el Supremo, y hay que reconocer que la presentación del Licenciado Rivera Cruz hace cerca de un año, entonces han ocurrido distintos factores, el Apelativo, el Tribunal Supremo le quitó el caso al Tribunal Apelativo y hace tres meses que está sentado allí, digo tiene esa Resolución". Informe Comisión Especial, págs. 529-530.

**Forzoso concluir que el recurso no es académico**. Existe una controversia viva y vigente, la cual, dependiendo de cómo aquí resolvamos, conllevará que ante la Comisión Especial comparezca Rivera Cruz. **Además, el recurso plantea una cuestión recurrente que atañe a las facultades básicas del Senado y su relación con el Poder Judicial**. Estas realidades hacen innecesario ampliar el análisis y aplicar otras posibles excepciones de la doctrina de academicidad.[17]

III

**Establecida la justiciabilidad del recurso**, la controversia medular planteada se reduce a dictaminar el alcance del descubrimiento de prueba a que tiene derecho una persona contra la cual se ha iniciado un procedimiento de desacato civil por ignorar orden del tribunal de comparecer a declarar ante un organismo de la Asamblea Legislativa.

---

[17] En su oposición a la desestimación del recurso por académico, Hon. Charlie Rodríguez, et al., nos sugieren como alternativa la aplicación de la doctrina de efectos colaterales.

¿Tiene derecho a citar como testigos legisladores y otros funcionarios legislativos? ¿Qué documentos puede descubrir? Acometamos esta sensitiva tarea.

La incuestionable prerrogativa investigativa de la Asamblea Legislativa, de entronque constitucional,[18] se considera indispensable e inseparable de su facultad de legislar. En Banco Popular v. Corte, 63 D.P.R. 66 (1944), al reconocer su existencia –citamos con aprobación McGraw v. Daugherty, 273 U.S. 135 (1927)–, **señalamos que negarlo, equivalía al absurdo de exigirle a la Legislatura proporcionar remedios en la oscuridad.**

Posteriormente, –en ocasión de unos planteamientos similares durante la primera investigación senatorial de los sucesos del Cerro Maravilla, actuando Rivera Cruz como investigador del Senado–, en Peña Clós v. Cartagena Ortiz, 114 D.P.R. 576 (1983), resolvimos que al momento en que se formuló nuestra Constitución las características de este poder se concebían como: 1) extraordinariamente amplio, especialmente cuando el objetivo no era un ciudadano particular en su capacidad privada, sino una agencia o funcionario público, en cuyo caso los tribunales debían ejercer mayor cautela al intervenir; 2) secuela y parte indispensable del atributo de legislar, de génesis constitucional; 3) no era absoluto, y sus límites correspondía fijarlos la Rama Judicial, no el Ejecutivo; 4) no puede ejercerse arbitrariamente; debe perseguir un propósito legislativo y no puede utilizarse para privar a la ciudadanía de sus derechos civiles; y 5) los tribunales no son, generalmente el foro para ventilar impugnaciones respecto de los motivos de una investigación. Describimos así "la carga jurídica aceptada al establecerse el poder legislativo" en el Art. III,

---

[18] Al redactarse la Constitución, los constituyentes estimaron innecesario hacer referencia expresa al poder legislativo de investigación, ya que dicha facultad derivaba de lo que sería la sec. 17 del Art. III. Trías Monge, Historia Constitucional de Puerto Rico, Vol. III, (1982), pág. 152, Río Piedras, P.R.

Sec. 1 de nuestra Constitución, hoy, básicamente inalterada. (Págs. 586-587, 590).

Como corolario de ese amplio poder, el Art. 34(A)(2) del Código Político,[19] provee que el tribunal expida citación ordenando al testigo que incumplió una orden de la Cámara de Representantes, Senado, o Comisión o Subcomisión de uno de esos cuerpos, que comparezca ante el organismo investigativo concernido. Su desobediencia será castigada por el Tribunal como **desacato civil**. En esa vista, el testigo podrá levantar todas las cuestiones constitucionales, legales y de hecho que estimare pertinentes. Art. 34(A)(3).[20]

Al interpretar estas disposiciones, el Circuito de Apelaciones concluyó que el procedimiento de desacato allí establecido era uno **civil ordinario** al cual hay que garantizar el debido proceso de ley. Sostuvo que "puesto que no existe un procedimiento establecido en cuanto al alcance del descubrimiento de prueba [en estos casos], es necesario recurrir a las Reglas de Procedimiento Civil. Resolvió que Rivera Cruz "tiene derecho a que se le permita el descubrimiento de **prueba pertinente** a las defensas legítimas que él pretende interponer en relación con la cuestión de desacato que se le imputa, siempre y

---

[19] Dispone:

"Radicada la petición ante la Sala de San Juan del Tribunal Superior de Puerto Rico, si surgiera de ésta que el testigo incumplió la orden de la Asamblea Legislativa, o de la Cámara de Representantes o del Senado, o de la comisión o subcomisión de uno de los cuerpos, o de la comisión o subcomisión conjunta, según sea el caso dicho tribunal deberá expedir una citación requiriendo y ordenando al testigo para que comparezca y declare o para que produzca la evidencia, documentos u objetos solicitados o para ambas cosas ante la Asamblea Legislativa, el Senado, la Cámara de Representantes, comisión, subcomisión o comité conjunto o ante dicho oficial investigador, según sea el caso; y cualquier desobediencia a la orden dictada por el tribunal será castigada por éste como un desacato civil al mismo." 2 L.P.R.A. 154(a)(2).

[20] Reza:

"Si el testigo incumpliere la orden del tribunal dictada bajo apercibimiento de desacato civil, al celebrarse la vista de desacato, el testigo podrá levantar en ella todas las cuestiones constitucionales, legales y de hecho que estimare pertinentes." 2 L.P.R.A. 154(A)(3).

cuando **no sea materia privilegiada**. Aunque no formuló criterio sobre el posible problema constitucional al determinar qué parte de la prueba solicitada era materia privilegiada, intimó que "el Senado podría estar obligado constitucionalmente a escoger entre, por un lado, desistir del procedimiento de desacato y mantener el privilegio o, por otro lado, continuar el procedimiento de desacato pero renunciando al privilegio que de otro modo le asistiría." **Incidió**.

De entrada, hemos de recordar que la clásica distinción entre el desacato civil y el criminal revela el propósito eminentemente reparador (no punitivo) del remedio civil. **Impone reclusión por término indefinido, efectivo hasta que el demandado cumpla. Este "tiene la llave de las puertas de la prisión en virtud del cumplimiento de su obligación principal y personal, y en esa forma se le da una oportunidad a la parte querellante para obtener el remedio o el resarcimiento que ella realmente interesa."** Pérez v. Espinosa, 75 D.P.R. 777, 782 (1954) seguido en Díaz Aponte v. Comunidad San José, Inc., res. en 23 de junio de 1992; Vélez Toro v. Látimer, 125 D.P.R. 109 (1990); Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246 (1988); Pueblo v. Vega Alvarado, 121 D.P.R. 282 (1988); Pueblo v. Pérez Casillas, 117 D.P.R. 380 (1986).[21] Partiendo de esta premisa, hemos resuelto que en los **desacatos civiles no es necesario observar todos los requisitos y garantías exigidos en procedimientos de desacato criminal.**[22] Pérez Pascual v. Vega Rodríguez, 124 D.P.R. 829 (1989); Guzmán Vega v. Piñero, 91 D.P.R. 704 (1965).

---

[21] International Union v. Bagwell, 512 U.S. 821, 829 (1944); Chester James Antieau, Modern Constitutional Law, second Ed., Vol. 2, West Group, 1997, pág. 769.

[22] **En el criminal, distinto al civil, la sentencia es por término fijo de encarcelación, con o sin multa, a cumplirse independientemente se cumpla la obligación original.** Por ello, su validez depende de que al inicio se advierta al querellado que ha de seguirse en su contra un procedimiento de naturaleza criminal, de forma que pueda invocar los derechos y garantías que dichos procesos reservan. Pérez Pascual v. Vega Rodríguez, 124 D.P.R. 529 (1989); Pueblo v. Vega, Jiménez, 121 D.P.R. 282 (1988); Sterzinger v. Ramírez Ramírez, 116 D.P.R. 762 (1985); Pueblo v. Lamberty González, 112 D.P.R. 79 (1982); Pueblo v.

Por no estar establecido ni existir un procedimiento específico que rija el descubrimiento de prueba en trámites de desacato originados en solicitudes de los cuerpos legislativos, procede, según intimó el Circuito de Apelaciones, **que sin desvirtuar su carácter extraordinario y conscientes de la necesidad de la más pronta adjudicación** –de lo contrario podríamos paralizar y reducir a nada el poder de investigación legislativo– que, supletoriamente acudamos a las Reglas de Procedimiento Civil. Estas rigen los asuntos de naturaleza civil judiciales y podemos **cualificadamente usarlas**, repetimos, siempre que sean compatibles y no afecten la naturaleza extraordinaria y peculiaridades del trámite de origen legislativo. **Sería absurdo que por una aplicación automática y mecanicista de las Reglas de Procedimiento Civil, incidentes de desacato legislativos –lo mismo que en materia de alimentos– arrastraran sus pies y demoraran meses o años.**

Con esta perspectiva presente, notamos que la Regla 23.1(a)[23] permite descubrir prueba sobre cualquier **materia pertinente** al asunto

---

Escalera, 95 D.P.R. 148 (1967); Guzmán Vega v. Piñero Piñero, 91 D.P.R. 704 (1965); Pérez v. Espinosa, supra.

Al respecto, la jurisprudencia federal, adoptada en nuestra jurisdicción ha reconocido que en este tipo de procedimiento –por ejemplo, en el que se tipifica **como delito** rehusarse a testificar ante algún foro legislativo– se tienen que garantizar todas las salvaguardas constitucionales. En Watkins v. United States, 354 U.S. 178, 208 (1957), el Supremo federal indicó que "[e]n cumplimiento de su obligación..., los tribunales tienen que conceder a los demandados todos los derechos que otorgan a los demandados en todos los otros casos criminales." (Traducción nuestra).

Por otro lado, se distingue entre el desacato sumario y el ordinario en que en el sumario el juez certifica que vio u oyó la conducta constitutiva de desacato, en cuyo caso se prescinde del requisito de vista. Sin embargo, los casos en que una parte desobedece una orden del tribunal se catalogan ordinarios y requieren que se le dé al **acusado** la oportunidad de ser oído. Pérez Pascual v. Vega Rodríguez, supra; Pueblo v. Ortiz Padilla, 102 D.P.R. 736 (1974); Pueblo v. Escalera, supra. Esta diferencia se ha establecido en el contexto del **desacato criminal.**

[23] Dispone:

"(a) **En general.** Las partes podrán hacer descubrimiento sobre cualquier materia, **no privilegiada**, que **sea pertinente** al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización

en controversia en el pleito pendiente, siempre que **no sea privilegiada**. Medina Morales v. Merck, res. en 7 de abril de 1994; General Electric v. Concessionaries, Inc., 118 D.P.R. 32 (1986).

Aunque el concepto **pertinencia** en el ámbito civil es más amplio que el utilizado con relación a la admisibilidad de prueba,[24] -siendo suficiente la posibilidad razonable de relación con el asunto en controversia, Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210 (1982)-, "no significa que el ámbito del descubrimiento de prueba sea ilimitado." General Electric v. Concessionaries, Inc., supra, pág. 40.

Además de ser pertinente, la prueba tiene que ser **competente**, concepto evidenciario que se refiere a la confiabilidad de la prueba o su exclusión, ya por **políticas extrínsecas o algún privilegio**. Fishman, Jones on Evidence, Civil and Criminal, 7ma Ed., N.Y., (1992), págs. 13 y 14; Allen, Federal Rules of Evidence, Boston, (1989), págs. 34 y 35. **Los privilegio pueden surgir de la Constitución, leyes o reglas**. Emmanuelli Jiménez, Prontuario de Derecho Probatorio

---

de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible."

[24] De la Regla 18 de Evidencia se colige que la admisibilidad de la prueba depende de su **pertinencia y competencia** al señalar que "[e]videncia pertinente es aquella tendente a hacer la existencia de un hecho más probable o menos probable de lo que sería sin tal evidencia; **dicho hecho debe a su vez referirse a una cuestión en controversia o a la credibilidad de algún testigo o declarante**."

El concepto **pertinencia** exige que la evidencia que se pretenda usar sea **material y relevante**. Una prueba es material si va dirigida a establecer un hecho adjudicativo, es decir se refiere a algún elemento de la reclamación, defensa o credibilidad de testigos o declarante. **En el fondo es una cuestión de derecho sustantivo**. Por su parte, la **relevancia** pertenece al ámbito de derecho procesal que busca que la prueba tenga una tendencia a hacer más o menos probable un hecho en controversia. Clearly, McCormick on Evidence, 3ra. Ed., St. Paul, Minn. (1984), págs. 541 y ss.

Aunque la tendencia puede ser mínima, la admisibilidad de la prueba aún depende de su grado de valor probatorio versus el potencial de causar perjuicio indebido. Regla 19, Evidencia.

Puertorriqueño, 1^{ra.} Ed., 1994, pág. 199. **En el caso que nos ocupa el privilegio nace de la Constitución y su importancia no se discute.**

IV

El Art. III, Sec. 14 de nuestra Constitución establece que **"todo miembro de la Asamblea Legislativa gozará de inmunidad parlamentaria por sus votos y expresiones en una u otra cámara o en cualquiera de sus comisiones"**. De este modo se elevó a linaje constitucional un privilegio que estaba enraizado en la Sec. 12 del Código Político que disponía que **"[n]o se interrogará ni pedirán explicaciones a ningún miembro de la Asamblea Legislativa en otro lugar ni podrá ser perseguido civil o criminalmente por las palabras vertidas durante el debate en una u otra cámara."** 2 L.P.R.A. sec. 12. A este privilegio le hemos reconocido la amplitud adjudicada por la jurisprudencia norteamericana.[25] Romero Barceló v. Hernández Agosto, 115 D.P.R. 368 (1984); In re Rodríguez Torres, 106 D.P.R. 698 (1978). **Confiere inmunidad a los miembros de la Asamblea Legislativa contra responsabilidad civil o criminal respecto a sus acciones en la esfera de los procesos legislativos legítimos. Constituye barrera absoluta contra interferencias del ejecutivo o el poder judicial en dichos procesos**, aunque no elimina la facultad revisora de los foros judiciales, sino que **evita las distracciones que conlleva tener que acudir a los tribunales a defender los actos legislativos.**[26] Es

---

[25] Miles-Unlimited, Inc. v. Town of New Shoreham, 917 F. Supp. 91 (1996); National Ass'n of Social Workers v. Harwood, 69 F. 3d 622 (1995); United States v. Rose, 28 F. 3d 181 (1994); Government of Virgin Islands v. Lee, 775 F. 2d. 514 (1985); McSurely v. McClellan, 753 F. 2d. 88, cert. denied 474 U.S. 1005 (1985); U.S. v. Helstoski, 635 F. 2d. 200 (1980); Hutchinson v. Proximine, 443 U.S. 111 (1979); U.S. v. Helstoski, 442 U.S. 477 (1979); Blake v. Delaware City, 441 F. Supp. 1189 (1977); Eastland v. United States Servicemen's Fund., 421 U.S. 491 (1975); Doe v. McMillan, 412 U.S. 306 (1975); Gravel v. United States, 408 U.S. 606 (1972); United States v. Brewster, 408 U.S. 501 (1972); Powell v. McCormack, 395 U.S. 486 (1969); Dombrowski v. Eastland, 387 U.S. 82 (1967); United States v. Johnson, 383 U.S. 169 (1966); Tenney v. Brandhove, supra; Kilbourn v. Thompson, 103 U.S. 168 (1881).

[26] Miles-Unlimited, Inc. v. Town of New, supra; Romero Barceló v. Hernández Agosto, 75 F. 3d 23 (1996); Barceló v. Agosto, 876 F. Supp. 1332 (1995); Brown & Williamson Tobacco Corp. v. Williams, 62 F. 3d 408

"precioso baluarte de la integridad e independencia del proceso legislativo y los tribunales se han resistido a achicar significativamente su ámbito y mucho menos a invadirlo." In re Rodríguez Torres, supra, pág. 708; Gross v. Winter, 692 F. Supp. 1420 (1988). **Para que pueda lograr sus propósitos, tiene que considerarse amplio e interpretarse liberalmente, de lo contrario los legisladores se inhibirían y distraerían en el desempeño de sus deberes constitucionales**. U.S. v. Eilbag, 465 F. Supp. 1080 (1979); U.S. v. Meyers, 432 F. Supp. 456 (1977); McSurely v. McClellan, 553 F. 2d. 1277 (1976); U.S. ex rel. Holanda v. Clay, 420 F. Supp. 853 (1976); Keefe v. Roberts, 355 A. 2d. 824 (1976); Doe v. McMillan, 412 U.S. 306 (1973); United States v. Johnson, 337 F. 2d. 180, affirm 383 U.S. 169 (1966). Entre las actividades protegidas encontramos: votaciones, informes de los comités y el **comportamiento** en las audiencias de los comités. Doe v. McMillan, supra; Gravel v. United States, 408 U.S. 606 (1972).

En Romero Barceló v. Hernández Agosto, supra, -caso también nacido al fragor de la primera investigación senatorial de los sucesos del Cerro Maravilla- señalamos que **el propósito básico del extenso privilegio de inmunidad legislativa es garantizar la independencia de la Rama Legislativa y fortalecer la separación de poderes**. Su ámbito incluye toda actividad legislativa legítima como formular leyes, **investigar**[27] y fiscalizar, debatir asuntos de interés público **e informar**

---

(1995); National Ass'n of Social Workers v. Harwood, supra; Pittston Coal Group v. International Union, 894 F. Supp. 275 (1995); U.S. v. Rustenkowski, 59 F. 3d 1291 (1995); Maddox v. Williams, 855 F. Supp. 406 (1994); Torres v. CBS News, 854 F. Supp. 245 (1994); U.S. v. McDade, 28 F. 3d 283 (1994); Brown v. Griesenaver, 970 F. 2d 431 (1992); U.S. v. Swindall, 971 F. 2d 1531 (1992); Virginians Against a Corrupt Congress v. Moran, 805 F. Supp. 75 (1992); Williams v. Brook, 945 F. 2d 1322 (1991); Gross v. Winter, supra, Minpeco, S.A. v. Conticommodity Servs., 844 F. 2d 856 (1988); Chastain v. Sandquist, 833 F. 2d 311 (1987); Chapman v. Space Qualified Sys. Comp., 647 F. Supp. 551 (1986); Lasa v. Colberg, 622 F. Supp. 557 (1985); Acosta v. Agosto, 590 F. Supp. 144 (1984); Miller v. Transamerican Press, Inc., 709 F. 2d 524 (1983); U.S. v. Meyers, 635 F. 2d 932, cert. denied 449 U.S. 956 (1980); Eastland v. U.S.S.F., supra; Gravel v. U.S., supra; Tenney v. Brandhove, supra.

[27] Las actuaciones de los **legisladores y sus ayudantes** en el curso de una investigación legislativa legítima están igualmente protegidos por la inmunidad. "[E]l poder de investigar cae claramente dentro de la

**sobre la gestión de la cosa pública.** Expresamos que **"[l]os motivos que inspiren una actividad legislativa legítima no son objeto apropiado de escrutinio judicial. La doctrina de la inmunidad parlamentaria pierde su valor si es que un legislador o un organismo legislativo tiene que someterse al rigor de los procedimientos judiciales por el ejercicio vigoroso de sus prerrogativas".** Pág. 380. Su protección trasciende el ámbito de la responsabilidad e incide en el aspecto evidenciario y testifical de los procesos. "La razón para conceder[..] inmunidad testimonial [...] es tan apremiante como lo es la razón para conceder inmunidad contra responsabilidad civil. Para lograr las intenciones de la doctrina de inmunidad legislativa a los legisladores que actúan dentro de la esfera de la actividad legislativa legítima no se les debe requerir que sean parte de una acción civil relacionada con las actividades legislativas, ni tampoco se les debe requerir que testifiquen en torno a esas actividades. [...] ('[e]l propósito de la doctrina es evitar que los legisladores tengan que testificar sobre asuntos de conducta legislativa, estén o no estén testificando para defenderse a sí mismos')." Miles -Un-Ltd., Inc. v. Town New Shorehan, R.I., 97 F. Supp. 91, 98 (1996). (Traducción nuestras y citas omitidas).

Si bien la inmunidad legislativa ha sido interpretada liberal y ampliamente, no constituye un privilegio absoluto. **Aún así, sus limitaciones son mínimas y extraordinarias, centradas principalmente en determinar lo que es o no una actividad legislativa protegida.** "Solamente están protegidas actuaciones realizadas en el curso del proceso de formular legislación, es decir, aquellas que son claramente parte del proceso legislativo." R. Serrano Geyls, ob. cit., pág. 638.[28]

---

definición del tipo de actividades que son parte integral de las deliberaciones del Congreso relacionadas con la formulación de legislación". R. Serrano Geyls, ob. cit., pág. 641; Eastland v. United States Servicemen's Fund., supra.

[28] Kilbourn v. Thompson, supra; Tenney v. Brandhove, supra; Dombrowski v. Eastland, supra; Eastland v. U.S.S.F., supra, Gravel v. U.S., supra; Doe v. McMillan, supra; United States v. Brewster, supra.

**Como todo privilegio, la inmunidad parlamentaria constituye un escollo en la búsqueda de la verdad, por lo que no debe extenderse más de lo necesario para preservar la integridad del proceso legislativo.** Brown & Williamson v. Williams, 62 F. 3$^{d}$. 408 (1995); U.S. v. Rostenkowski, 59 F. 3$^{d}$. 1291 (1995); U.S. v. Biaggi, 853 F. 2d 89 (1988); Miller v. Transamerican Press. Inc., 709 F. 2$^{d}$. 524 (1983); U.S. v. Mandel, 415 F. Supp. 1025 (1976); U.S. v. Brewster, 408 U.S. 501 (1972).

**Respecto a los ayudantes, incluso oficiales investigadores[29] de los legisladores y comisiones, la cláusula de inmunidad también les cobija siempre que su conducta se considere actividad legislativa protegida de realizarla el propio legislador.** La necesidad de delegar funciones, -por la complejidad del proceso legislativo-, justifica incuestionablemente tal extensión. "[C]on el propósito de interpretar el privilegio, un miembro y su ayudante serán tratado como uno...." Gravel v. U.S., supra, 616. Benford v. American Broadcasting Comp., 502 F. Supp. 1148 (1980); Peroff v. Manvel, 421 F. Supp. 570 (1976); Steiger v. Superior Court, 536 P. 2d. 689 (1975); Eastland v. U.S.S.F., 421 U.S. 491 (1975). El privilegio que puede reclamar el ayudante es el del legislador, invocable sólo por éste o por el ayudante a nombre suyo. "[S]e limita a aquellas tareas que constituirían conducta legislativa inmune si fueran realizadas por el propio legislador. No incluye, por otra parte, una serie de servicios que normalmente prestan los ayudantes. Tampoco protege aquella conducta criminal que amenace la seguridad o la propiedad de otros, aunque esté relacionada con un acto legislativo, bien que se lleve a cabo bajo la dirección del legislador, o que se realice sin su conocimiento y dirección." R. Serrano Geyls, ob. cit., pág. 640-641.

---

[29] El Primer Circuito de Boston en Romero Barceló v. Hernández Agosto, 75 F. 3d. 23 (1996), reafirmando la extensión del privilegio a los oficiales investigadores, concluyó que el Lcdo. Pérez Viera, entonces Oficial Investigador del Senado, estaba protegido por la inmunidad legislativa al igual que los miembros de la Comisión.

Ahora bien, por excepción, existen **circunstancias extraordinarias** en que un legislador puede ser compelido a declarar sobre sus funciones legislativas. Aún en ellas, el privilegio legislativo les cobija, excluyendo sus testimonios. Village of Arlinton v. Metro Housing, 429 U.S. 252 (1977).[30]

En aras de proteger el valor constitucional del privilegio legislativo, igual criterio prevalece en nuestra jurisdicción. Darle mayor laxitud al ámbito de **circunstancias extraordinaria**, atentaría contra el poder legislativo y debilitarían sus prerrogativas constitucionales, permitiendo obstrucciones innecesarias. **Por estas razones, los tribunales federales tampoco favorecen permitir el descubrimiento, específicamente prueba documental, en procedimientos de citaciones so pena de desacato**. En FTC v. Carter, 636 F. 2d. 781, 789 (1980), el Tribunal de Circuito de Apelaciones para el Distrito de Columbia sostuvo que "[e]xcepto en circunstancias extraordinarias..., el descubrimiento es impropio en un procedimiento para ejecutar un subpoena sumario". (Traducción nuestra).

Se entiende pues, que la disposición del Código Político que brinda al testigo que incumpla orden del Tribunal so pena de desacato, el derecho a levantar todas las cuestiones constitucionales legales y fácticas **pertinentes** en la vista de desacato, **no abre el proceso a un descubrimiento de prueba ordinario, como tampoco anula ni deja sin efecto la normativa sobre privilegios legislativos expuesta**. Consideraciones de peso constitucionales, jurídicas, de hermenéutica y lógicas, impiden imputarle al legislador la intención de renunciar a su inmunidad legislativa al redactar el citado precepto. Primero, no surge expresamente tal renuncia. Pittston Coal. Inc. v. Intern. Union, 894 F.

---

[30] Ejemplos de circunstancias extraordinarias son: actos de traición, amenaza contra el sistema político, delitos, etc. Corporación Insular de Seguros v. García, 709 F. Supp. 288 (1989); In re Grand Jury, 821 F. 2d 946 (1987); Hartley v. Fine, 595 F. Supp. 83 (1984); United States v. Gillock, 445 U.S. 360 (1980); Lake Country Estates v. Tahoe Planning Agency, 440 U.S. 391 (1979); United States v. Johnson, supra; Kilbourn v. Thompson, supra.

Supp. 275 (1995); U.S. v. Richmond, 550 F. Supp. 605 (1982); U.S. v. Helstoski, 442 U.S. 477 (1979); Eslinger v. Thomas, 476 F. 2d. 225 (1972). Segundo, su propósito fue facilitar y ampliar el ejercicio de las prerrogativas constitucionales de la legislatura en su función investigativa, facultándola a compeler a los testigos a través del Tribunal. V. XXXIX, Diario de Sesiones, Núm. 41, págs. 2904-2909; 2921-2941. **No fue, enfatizamos, renunciar al privilegio de inmunidad y dar el derecho a citar legisladores y descubrir materia cubierta por tal inmunidad. El descubrimiento de prueba al cual todo promovido tiene derecho, ha de estar limitado y condicionado por dicha normativa.**[31]

_____

[31] Por otro lado, de los Reglamentos del Senado y la Comisión Especial, se puede colegir con mayor precisión el ámbito del descubrimiento de prueba en posesión de las comisiones y quién o quiénes tienen derecho a descubrirla.

El Reglamento del Senado para **Regir Investigaciones Conducidas por las Comisiones Permanentes o Especiales**, Sec. 14.4 visualiza para que los miembros de mayoría y minoría de las Comisiones, a través del Presidente, **citen testigos y requieran documentos**. Además, **exige dar a todos los miembros copia de cualquier documento, objeto o elemento de prueba a utilizarse en la deposición de cualquier testigo**, con tres días de antelación a la vista ejecutiva, de estar disponible. Su Sec. 14.5 concede a los deponentes, entre otros derechos, **formular peticiones pertinentes a su testimonio ante la Comisión** y que se atiendan en un periodo de 48 horas. El presidente de la **Comisión adjudica su pertinencia.** La 14.7 establece que los miembros de la minoría tienen derecho a obtener, para su Oficial Investigador, toda la evidencia recopilada a lo largo del proceso legislativo. **Su sección 14.8 impone a la Comisión velar porque los hallazgos de la investigación se mantengan en total confidencialidad hasta que la Comisión autorice su divulgación.**

Por su parte, el **Reglamento Para Regir la Investigación Senatorial Sobre Posibles Irregularidades o Actuaciones Ilegales o Impropias en el Manejo de la Pesquisa Senatorial Sobre Los Sucesos del Cerro Maravilla**, garantiza al Oficial Investigador de minoría: **acceso continuo durante todas las etapas de la investigación a toda la evidencia e información externa obtenida;** notificación oportuna de todos los pormenores y procedimientos investigativos, incluyendo nombre de testigos, fecha de citación y resultado de las citaciones; opción a estar presente en la toma de declaraciones juradas y entrevistas realizadas por el Oficial Investigador de mayoría. **No obstante, advierte que si cualquier Oficial Investigador divulga a terceros dentro y fuera del senado, información obtenida en la investigación preliminar sin autorización de la Comisión o su Presidente podrá ser amonestado y hasta separado del cargo.** En cuanto a los testigos citados a declarar o suministrar documentos, les da derecho a estar acompañados por dos personas que acrediten haber cumplido con los fines de la investigación. Estos **tienen que juramentar confidencialidad** ante el Oficial Investigador de Mayoría y no podrán dirigirse a ningún Oficial Investigador antes o durante el interrogatorio **ni tomar notas ni perpetuar de ninguna forma lo acontecido en el interrogatorio.**

La Regla 2, dispositiva de los derechos y obligaciones de los testigos exige se les entregue copia del Reglamento junto con la citación. **Le prohibe grabar la declaración. Impide al Presidente, miembros de la Comisión y Senado, acceso a ningún testimonio y evidencia de ningún tipo antes de ser presentada a la Comisión en pleno por el Oficial Investigador de Mayoría en audiencia pública o ejecutiva.** La Regla 5 dispone que **sólo el Presidente** de la Comisión o el **Oficial Investigador** de la mayoría, autorizado por el Presidente, **pueden publicar el nombre de cualquier testigo citado.**

La Regla 7, reguladora de los procedimientos de las vistas y la transcripción de testimonios, establece en su inciso B, que si la Comisión Especial hace público cualquier testimonio bajo juramento en Sesión Ejecutiva,

V

A la luz de estos principios rectores y las disposiciones reglamentarias del Senado y Comisión Especial aplicables, evaluemos las objeciones del Senado basadas en el privilegio constitucional aludido ante los reclamos de Rivera Cruz.

A modo de **introito**, es totalmente inmeritoria la impugnación de Rivera Cruz sobre la validez y legitimidad de la gestión investigativa de la Comisión Especial. Tampoco puede liberarse de comparecer a deponer basado en que se le está persiguiendo políticamente. Precisamente ese mismo argumento fue traído sin éxito por varias personas cuando él era Investigador del Senado durante la primera pesquisa senatorial. Su condición de ex-investigador del Senado y ex-Secretario de Justicia no le da mayores derechos ciudadanos ni crea inmunidades especiales.

En cuanto a la **citación de los testigos**, el privilegio de inmunidad legislativa, **de origen constitucional**, derrota su pretensión. El privilegio pertenece a los miembros de la Asamblea Legislativa. No puede ser reclamado ni renunciado por parte privada. No podemos obligar al Presidente del Senado, Lcdo. Rodríguez, ni al Presidente de la Comisión Especial, Peña Clós, a declarar en la vista de desacato. Tampoco los oficiales investigadores de la Comisión, Lcdos. Corona y Abréu, ni los ex-investigadores de la actual Comisión del Senado, Lcdo. César E. Mercado Santaella y Lcda. Nilka Marrero. Ninguno —por su condición de ayudantes o ex-ayudantes legislativos de la Comisión y

---

tiene que notificarlo al testigo por correo o personalmente con copia de su declaración. Además, **un testigo examinado bajo juramento en Audiencia Pública o que parte de su testimonio ofrecido en Sesión Ejecutiva se hizo parte del récord de una Audiencia Pública, tiene derecho a copia de la transcripción de su testimonio. Prohibe, hacer público testimonios ofrecidos en Sesión ejecutiva que la Comisión Especial determine imputan conducta difamatoria, denigrante o incriminatoria, a menos que la persona mencionada sea informada del testimonio y se le dé oportunidad de testificar bajo juramento.**

La Regla 8 expresa claramente que la **evidencia obtenida en audiencia ejecutiva será secreta y sólo se hará pública cuando la Comisión lo determine** y cumpliendo con la Regla 7. Añade, que toda evidencia obtenida en audiencia ejecutiva debe publicarse finalmente, antes o con el informe preliminar y/o informe final, **excepto que su confidencialidad esté dispuesta por ley o porque la Comisión Especial determine que no debe publicarse por razones de interés público. Igual carácter de secretividad tienen las discusiones y acuerdos de**

sobre los cuales el Senado ha reclamado el privilegio legislativo- están obligados a comparecer como testigos a dicha vista. **Rivera Cruz no ha argumentado, mencionado ni demostrado circunstancias extraordinarias excepcionales que nos muevan siquiera a considerar tal posibilidad.**

Es meritorio aclarar que Rivera Cruz no puede invocar la inmunidad legislativa que posee como ex-investigador del Senado y negarse a testificar ante la Comisión, por no ser oponible el privilegio a la Rama Legislativa.

Como hemos señalado, el privilegio legislativo fue concebido esencialmente para proteger a la Legislatura de interferencias indebidas de parte de las otras ramas de gobierno, y así fortalecer la separación de poderes. Consecuentemente, esa inmunidad se da frente a las demás ramas, no ante el propio cuerpo legislativo. En las circunstancias en las que se encuentra Rivera Cruz, no existe el interés constitucional tutelado: la separación de poderes. Romero Barceló v. Hernández Agosto, supra; United States v. Gillock, 445 U.S. 360, 369 (1980); United States v. Heltoski, supra; Davis v. Passman, 442 U.S. 228, 246 (1979); In re Rodríguez Torres, supra; U.S. v. Brewster, supra; U.S. v. Johnson, supra.

**Con relación a los documentos, Rivera Cruz sólo tiene derecho a aquellos pertinentes a la vista de desacato, que sean de naturaleza pública o autorice expresamente el Reglamento de la Comisión Especial. No puede descubrir los que hasta ahora son confidenciales (no públicos) y forman parte del proceso investigativo legítimo.** Por su intrínseca relación con las expresiones orales legislativas, no se discute que éstos son igualmente privilegiados. National Ass'n. v. Harwood, 60 F. 3$^{d}$. 622 (1995); Minpeco v. Conticommodity, 844 F 2$^{d}$. 856 (1988); Walker v. Jones, 733 F. 2$^{d}$. 923 (1984); Miller v. Transamerican Press. Inc., supra; Rusack v. Harsha, 470 F. Supp. 285 (1978); United States v.

---

las audiencias ejecutivas, salvo que el Presidente o la Mayoría de los miembros de la Comisión estimen lo contrario.

Graig, 528 F. 2d 773 (1976); United States v. Mandel, supra; United States v. Brewster, supra; McGovern v. Martz, 182 F. Supp. 343 (1960). **En la dimensión evidenciaria, la inmunidad parlamentaria impide descubrir comunicaciones, deliberaciones, récords o documentos no públicos, que puedan resultar en una interferencia del proceso legislativo legítimo.**

En vista de ello, concluimos que **erró** el Tribunal de Circuito y actuó correctamente Instancia al denegar los siguientes documentos: copia de las agendas de las vistas a las que fue citado Rivera Cruz; transcripción de las **vistas ejecutivas** de la Comisión, relacionadas con su comparecencia; copias de la notificación o citación a **otros testigos** para que comparecieran a las vistas a las que estaba citado Rivera Cruz y sus respectivos diligenciamientos; copias de los expedientes en poder de la Comisión o del investigador, relacionados con Rivera Cruz; copias de las declaraciones, informes, documentos y evidencia **no públicos**, producto de la investigación realizada por la Comisión Especial de lo Jurídico del Senado en 1981 al 1984, cuando Rivera Cruz actuó como investigador; así como copias de las declaraciones, informes, documentos y evidencia producto de las investigaciones del Senado durante los años 1993-1996, y la presente investigación o de las vistas públicas o ejecutivas en las que se haya mencionado o esté relacionado Rivera Cruz; copias de cualquier informe o documento preliminar o final, parcial o completo o en borrador, donde cualquier comisión del Senado, que haya investigado la investigación del Cerro Maravilla desde enero de 1993 hasta el día de hoy, preparado o redactado, por sí o a través de algún agente, empleado, investigador o asesor o por cualquier persona en donde se haya evaluado o emitido comentarios, conclusiones o recomendaciones relacionadas con las actuaciones de Rivera Cruz.

Ambos foros **incidieron** al ordenar a la Comisión Especial entregar la transcripción de las minutas, reuniones y vistas que dieron lugar a la Resolución del 28 de octubre de 1997 para solicitar al Tribunal

ordenara a Rivera Cruz mostrar causa por incumplir la orden del 21 de octubre de 1997.

Procede, como correctamente dictaminó Instancia, además de todos los documentos de naturaleza pública, la entrega a Rivera Cruz de las copias de los documentos que utilizaría la Comisión Especial en la vista del 6 de noviembre de 1997; la transcripción de las vistas de dicha Comisión los días 14, 16, 18, 28, 29, 30 y 31 de octubre de 1997; y copias de las citaciones a Rivera Cruz para comparecer los días 14, 15, 16, 28, 29, 30 y 31 de octubre de 1997.

Rivera Cruz ha esgrimido como defensa que se violó el derecho de la minoría a estar representada en la Comisión Especial al no proveerles adecuada notificación y acceso a documentos. A la luz de lo resuelto en Silva v. Hernández Agosto, 118 D.P.R. 45 (1986),[32] no tiene derecho a descubrir los documentos utilizados por la Comisión Especial, por carecer de legitimidad activa para exigirlos. Sin embargo, no está totalmente huérfano de remedio. En Hernández Agosto v. Betancourt, 118 D.P.R. 79, 85 (1986), resolvimos que un testigo que se ha negado a comparecer a la Legislatura, puede "levantar como defensa que la Comisión investigadora no estaba válidamente organizada .... requisito de naturaleza jurisdiccional y corresponde al cuerpo legislativo demostrar que dicha Comisión estaba, dentro de nuestro esquema constitucional, debidamente constituída para hacer la investigación". Por ende, es acreedor a la entrega de las citaciones y notificaciones a los miembros de la minoría de la Comisión Especial sobre las vistas a celebrarse los días 29, 30 y 31 de julio; 14, 15, 16, 28, 29, 30 y 31

---

[32] En Silva, los demandantes fueron los Senadores Rolando A. Silva, Calixto Calero Juarbe y la Sra. Mercedes Torres Vda. de Pérez, **en calidad de miembros de la Comisión de lo Jurídico del Senado,** en representación de la minoría P.N.P., quienes impugnaron la validez de la Regla 7.1 del Reglamento de la Comisión investigativa, que permitía excluir a los miembros de la minoría de las vistas ejecutivas, y por ende, el acceso de los documentos y testimonios allí vertidos. Resolvimos que para invocar la facultad constitucional de citar so pena de desacato y procesar por desacato y perjurio, era necesario que las minorías tuvieran oportunidad de estar representadas. No obstante, allí aclaramos que si voluntariamente se abstenían de participar, ello no

de octubre de 1997, así como las vistas que dieron lugar a la Resolución del 28 de octubre de 1997 para solicitar al Tribunal ordenara a Rivera Cruz mostrar causa por incumplir la orden del 21 de octubre.

No procede, como pretende Rivera Cruz, descubrir otros documentos utilizados por la Comisión en dichas vistas, pues su reclamo y entrega a los miembros de la actual minoría es prerrogativa que les pertenece como legisladores. Rivera Cruz, repetimos, carece de la investidura de **legitimación activa** para exigir a nombre de ellos dicha entrega.

VI

Finalmente, nuestra Constitución, al igual que la federal, contiene dos vertientes del debido proceso de ley: la procesal y la sustantiva. La sustantiva protege y salvaguarda los **derechos fundamentales** de la persona, mientras la procesal exige procedimientos justos y equitativos al momento de interferir con la libertad y propiedad del individuo. Art. II, Secc. 7. Bajo el análisis del debido proceso de ley sustantivo, al aprobar leyes o al realizar alguna actuación, el Estado no puede afectar de manera irracional, arbitraria o caprichosa, los intereses de libertad y propiedad, así como la dignidad e integridad humana, preciado derecho fundamental de incuestionable envergadura en la vida de todo ser humano en una sociedad democrática. "Nuestra Constitución es la guardadora de estos valores y por ende es a sus disposiciones a las que tenemos que dirigirnos erigiéndolas como los guardianes máximos de estos valores éticos-morales, que resultan ser consustanciales con la naturaleza humana e indispensables para la convivencia en una sociedad democrática." Serrano Geyls, ob. cit., Vol. II, pág. 1058 (1988). UIEAEP v. AEP, es. en 13 de agosto de 1998; Rodríguez Rodríguez v. E.L.A., res. en 4 de junio de 1991; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987).

---

impedía a la Comisión reunirse válidamente. Silva v. Hernández Agosto, supra, pág. 74.

El debido proceso de ley y, claro está, el respeto hacia la dignidad humana, como valores fundamentales han sido reconocidos y configurados por el propio alto cuerpo legislativo en sus Reglas para Regir Investigaciones Conducidas por las Comisiones Permanentes o Especiales del Senado de Puerto Rico. Exigen "ejercer [el] poder de investigación con **prudencia** y **justicia**, **cuidando que se protejan los derechos de las personas** e instituciones afectadas por una pesquisa, lo mismo que los intereses de los sectores representados en el órgano legislativo que la lleva a cabo." Su Sec. 14.8 establece que los **oficiales investigadores deben respetar la dignidad y reputación de los individuos e instituciones con las que intervengan.** Iguales directrices sigue el Reglamento de la Comisión Especial, cuya Regla 2(B) específicamente dispone que "[l]os Oficiales Investigadores velarán que se respete la dignidad y reputación de los testigos durante el interrogatorio."

Al respecto, al adjudicar esta compleja controversia hemos constatado la animosidad existente recíproca entre el Presidente de la Comisión, Peña Clós, el Oficial Investigador Corona y el propio Rivera Cruz. De un modo u otro, los agrios incidentes, epítetos y acusaciones mutuas han contribuido a crear un ambiente de densa hostilidad, que ha dificultado la observancia del debido proceso de ley, situación ajena a la seriedad y respeto que siempre deben prevalecer en los procesos legislativos.

**No es objeto de debate, que en cualquier escenario, la dignidad de todo ser humano es inviolable: muchas veces la agresión verbal hiere más que la física.** Aunque toda restricción o auto-control del poder resulta mortificante, es imperativo que los protagonistas del caso de autos superen estilos poco edificantes y, en buena civilidad, contribuyan con comportamientos positivos a que nuestras instituciones democráticas sean dignos ejemplos de madurez y tolerancia. "Las diferencias y los conflictos no perturban la solidaridad de los seres humanos en el bien común sino que, por el contrario, la fortalece y afianza." Informe Carta de Derechos, Asamblea Constituyente, Diario de Sesiones, Vol. 4, (Ed. Equity), 1961, pág. 2563.

Se dictará sentencia modificatoria, ordenándose al Tribunal de Instancia, que a la **brevedad posible**, resuelva específicamente si en efecto, la Comisión Especial estaba debidamente constituída por haberse citado a todos sus miembros, incluso los de las minorías, y además, si a la luz del debido proceso de ley, estuvo justificada la incomparecencia del Lcdo. Rivera Cruz a las vistas pautadas para los días 28 al 31 de octubre de 1997. Dictaminados ambos extremos de este mandato, deberá adjudicar el incidente de desacato.[33]

ANTONIO S. NEGRON GARCIA
Juez Asociado

---

[33] En nada menoscaba la facultad del Senado de volver a citar a Rivera Cruz, con independencia del trámite y resultado final sobre **este incidente de desacato.**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hon. Charlie Rodríguez, Presidente, Senado de Puerto Rico; Hon. Sergio Peña Clós como Presidente de la Comisión Especial sobre el Cerro Maravilla del Senado de Puerto Rico y la Comisión Especial<br><br>      Peticionarios | CC-97-735      Certiorari |

SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia modificando la del Tribunal de Circuito de Apelaciones y ordena al Tribunal de Primera Instancia que a la **brevedad posible**, resuelva específicamente si en efecto, la Comisión Especial estaba debidamente constituída por haberse citado a todos sus miembros, incluso los de las minorías, y además, si a la luz del debido proceso de ley, estuvo justificada la incomparecencia del Lcdo. Rivera Cruz a las vistas pautadas para los días 28 al 31 de octubre de 1997. Dictaminados ambos extremos de este mandato, deberá adjudicar el incidente de desacato.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinió Concurrente y Disidente. El Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón se inhibieron. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Hon. Charlie Rodríguez,
Presidente, Senado de Puerto
Rico; Hon. Sergio Peña Clós
como Presidente de la
Comisión Especial sobre el
Cerro Maravilla del Senado
de Puerto Rico y la Comisión          CC-97-735   Certiorari
Especial

    Peticionarios


Opinión Concurrente y Disidente emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 30 de junio de 1999.

El Senado de Puerto Rico recurre ante nos para revisar una sentencia del Tribunal de Circuito de Apelaciones que dictaminó que el Lcdo. Héctor Rivera Cruz tiene derecho al descubrimiento de toda aquella prueba pertinente y no privilegiada, relativa a aquellas defensas legítimas, en la vista a celebrarse para determinar si se le debe encontrar incurso en desacato, al amparo del Artículo 34-A del Código Político. 2 L.P.R.A. sec. 151a.

La Opinión de este Tribunal modifica la sentencia del Tribunal de Circuito de Apelaciones y, desde este estrado apelativo, dispone cuáles de los documentos solicitados por el licenciado Rivera Cruz

como parte del descubrimiento de prueba son descubribles y cuáles son privilegiados.

Concurrimos con la Opinión del Tribunal respecto a la determinación de que el recurso no es académico, y sobre el alcance de las facultades investigativas de las comisiones legislativas. También coincidimos con la mayoría respecto a la existencia, envergadura, y aplicación del privilegio consagrado en la Cláusula constitucional de Inmunidad Parlamentaria.

Sin embargo, por considerar que el Art. 34-A expresamente le otorga a un imputado el derecho a levantar en la vista de desacato en el foro de instancia, todas las cuestiones constitucionales, legales y de hecho que corresponden en derecho, y que **en virtud de unas garantías constitucionales mínimas requeridas por el debido proceso de ley, el licenciado Rivera Cruz tiene derecho a descubrir toda aquella materia relativa a sus defensas legítimas, que sea pertinente y no privilegiada**, disentimos. A diferencia de la Opinión del Tribunal, confirmaríamos la sentencia del Tribunal de Circuito de Apelaciones y devolveríamos el caso al foro de instancia para la celebración de una vista en la cual se determine, a la luz de los criterios de pertinencia y privilegios, cuáles citaciones y documentos solicitados por el licenciado Rivera Cruz le deben ser entregados.

I

La Asamblea Legislativa aprobó la Resolución del Senado Núm. 18 de 30 de enero de 1997 creando la Comisión Especial sobre el Cerro Maravilla, a los fines de investigar alegadas irregularidades y actuaciones ilegales en el manejo de la investigación senatorial del Cerro Maravilla durante los años 1981 a 1992, incluyendo la Oficina del Fiscal Independiente sobre el Cerro Maravilla. La Comisión Especial expidió citación al licenciado Rivera Cruz para que compareciese a unas vistas a celebrarse. El licenciado Rivera Cruz alegó que compromisos profesionales previos le impedían comparecer en las fechas señaladas.

El Senado expidió una nueva citación. El licenciado Rivera Cruz informó que no comparecería por considerar que la citación era improcedente en derecho. El Senado acudió al tribunal a solicitar una orden para requerir al licenciado Rivera Cruz que compareciese. Dicho foro le ordenó comparecer so pena de desacato. El licenciado Rivera Cruz alegó que compromisos previos le impedían asistir en la fecha pautada e indicó otras fechas en que estaría disponible.

La Comisión Especial acogió la excusa del licenciado Rivera Cruz y acordó citarlo nuevamente. En esta ocasión el licenciado Rivera Cruz honró la citación, compareció y declaró ante la Comisión Especial. El último día de su comparecencia se negó a contestar las preguntas del Oficial Examinador de la mayoría, e indicó que quería expresar las razones para su negativa. La Comisión Especial le ordenó contestar pero el licenciado Rivera Cruz, tras intentar leer una ponencia que había preparado, abandonó el lugar y sometió ante la Comisión Especial dicha ponencia.

A solicitud del Senado, el Tribunal de Primera Instancia ordenó al licenciado Rivera Cruz que compareciese, so pena de desacato. Tras varios incidentes, el foro de instancia señaló la celebración de una vista judicial y ordenó al licenciado Rivera Cruz que explicara las razones por las cuales se había ausentado de la vista de la Comisión Especial.

Ante este requerimiento, el licenciado Rivera Cruz presentó simultáneamente tres peticiones: una moción urgente solicitando transcripción y entrega de documentos antes de la celebración de la vista de desacato, una moción solicitando se expidiesen citaciones de testigos para dicha vista (entre los cuales se encontraban dos senadores y el Fiscal Especial a cargo de la investigación de Cerro Maravilla) y una moción de desestimación.[34]

---

[34] El licenciado Rivera Cruz adujo, en su moción de desestimación ante el tribunal de instancia, varias razones para justificar su incomparecencia a las vistas de la Comisión. En síntesis alegó que la Comisión Especial no está legalmente constituida ya que la

Evaluadas las mociones, el tribunal a quo ordenó la entrega de copias de ciertos documentos y transcripciones solicitados. Determinó además que los hechos relevantes al incidente de la incomparecencia del licenciado Rivera Cruz a la vista de la Comisión Especial debían poder ser objeto de estipulación entre las partes, e instruyó específicamente a los abogados de las partes a venir preparados a la vista de desacato para estipular dichos hechos.

Inconforme con esta resolución el licenciado Rivera Cruz acudió al Tribunal de Circuito de Apelaciones. Dicho foro determinó que el licenciado Rivera Cruz tiene derecho a un descubrimiento de prueba amplio, ya que está expuesto a un proceso que puede culminar en la pérdida de su libertad. Debido a que nada hay en las disposiciones del Artículo 34-A que regule el tipo y alcance del descubrimiento de prueba a permitirse, determinó que lo procedente era acudir de modo supletorio, a las Reglas de Procedimiento Civil.

El tribunal apelativo aclaró específicamente que el licenciado Rivera Cruz no tiene derecho a descubrir aquella prueba que el foro de instancia determine que no es pertinente a aquellas defensas que sean legítimas en derecho, o que aunque sean pertinentes, se trate de materia privilegiada.[35]

---

investigación carece de un fin legítimo y equivale a un uso ilegítimo del poder legislativo; que como ex-investigador de una comisión legislativa previa le cobija la inmunidad legislativa ya que una nueva legislatura no puede pasar juicio o investigar los procesos internos de otra legislatura anterior; que se violentaron los derechos de los miembros de la minoría de la Comisión Especial al no proveerles adecuada notificación y acceso a documentos e información; que se atropellaron sus derechos a un debido proceso de ley; que se puso en riesgo su seguridad; y que los miembros de la Comisión Especial reiteradamente, mediante imputaciones personales, violaron su dignidad, honra e integridad personal.

[35] El Tribunal de Circuito de Apelaciones intimó, sin resolver, en una nota al calce de su sentencia, que podría darse la situación en que de determinar el tribunal de instancia que parte de la prueba solicitada por el licenciado Rivera Cruz fuese pertinente pero privilegiada, dependiendo de la relación entre dicha prueba y las defensas a presentarse, el Senado podría estar obligado constitucionalmente a escoger entre desistir del desacato y mantener el privilegio, o renunciar al privilegio y continuar con el proceso de desacato. No le asiste la razón. Dicha norma es de aplicación sólo a casos criminales. Jencks v. U.S., 353 U.S. 657 (1957); U.S. v. Andolscheck, 142 F.2d 503 (1944). Los tribunales federales han declinado extenderla

De esta sentencia recurre ante nos el Senado y expone como **único error** que el tribunal apelativo incidió al concluir que el licenciado Rivera Cruz tiene derecho a un descubrimiento de prueba amplio. Aduce además, que el licenciado Rivera Cruz sólo tiene derecho a aquellos documentos que vayan a ser presentados por el Senado en la vista de desacato, y que el resto de los documentos solicitados están protegidos por la Cláusula de Inmunidad Parlamentaria.

II

Nos corresponde, pues, determinar el alcance del descubrimiento de prueba a concederse dentro de una vista de desacato civil al amparo del Artículo 34-A del Código Político, tanto en su alcance estatutario como en su dimensión constitucional. Para ello es necesario que examinemos la disposición estatutaria pertinente, así como la naturaleza del desacato civil y su jurisprudencia interpretativa.

El Artículo 34-A del Código Político[36] tiene el propósito de crear un procedimiento mediante el cual los cuerpos legislativos puedan comenzar directamente un procedimiento judicial por desacato contra un testigo recalcitrante, sin que se dependa de la Rama Ejecutiva para instarlo. Dicho poder es necesario para que la Rama Legislativa pueda desempeñar adecuadamente sus funciones investigativas, pues para poder obtener información tiene que tener la autoridad para citar testigos, y

---

a casos civiles, aun a aquéllos en que el Estado es la parte promovente. U.S. v. Reynolds, 345 U.S. 1 (1953); Attorney General of U.S. v. Irish People, Inc., 684 F.2d 928 (1982); U.S. v. Koreh, 144 F.R.D. 218 (1992).

En el caso ante nos, aunque el licenciado Rivera Cruz se enfrenta a la posibilidad de una reclusión, no podemos olvidar que en los casos de desacato civil "el imputado tiene las llaves que abren su celda en el bolsillo", ya que sólo tiene que cumplir con la orden emitida. Gompers v. Bucks Stove & Range Co., 221 U.S. 418 (1911). No podemos, pues, caracterizar su pena de cárcel como una de carácter penal.

[36] Ley Núm. 100 de 23 de junio de 1955, sec. 2, según enmendada por la Ley Núm. 5 de Julio 23 de 1987. 2 L.P.R.A. sec. 154a.

compeler tanto su asistencia como su declaración.  Pueblo v. Pérez Casillas, 117 D.P.R. 380 (1986).[37]

Con este propósito el Artículo 34-A dispone que la desobediencia a la orden del tribunal será castigada como un desacato civil. Sin embargo, antes de la imposición de dicha sentencia, el Artículo 34-A requiere que se celebre una vista judicial para que el imputado pueda presentar sus defensas de hecho y de derecho:

*Si el testigo incumpliere la orden del tribunal dictada bajo apercibimiento de desacato civil, al celebrarse la vista de desacato, el testigo podrá levantar en ella todas las cuestiones constitucionales, legales y de hecho que estimare pertinentes.* Art. 34A (3), 2 L.P.R.A. sec. 154a(3).

Un examen del artículo demuestra que en todo procedimiento por desacato incoado al amparo de dicha normativa deberá celebrarse una vista y permitirse al imputado presentar prueba pertinente a sus defensas de hecho y de derecho.  Estas disposiciones del Artículo 34-A son cónsonas con los parámetros establecidos por el debido proceso de ley en aquellos casos de desacato civil.  Desde Villa v. Corte, 42 D.P.R. 879, 900 (1933), reconocimos que el imputado tiene la facultad de evitar ser encarcelado indefinidamente si logra demostrar causa justificada para la conducta que se alega constitutiva de desacato civil.

Aunque la imposición de una sentencia de desacato civil, por su naturaleza reparadora y no punitiva, exige un grado menor de salvaguardas procesales que la imposición de una sentencia por desacato criminal,[38] no podemos obviar que el imputado está expuesto a perder su

---

[37]  El Tribunal Supremo federal ha dictaminado que, aun en ausencia de legislación aplicable, el cuerpo legislativo tiene poder inherente para citar y compeler la comparecencia de un testigo mediante el poder de desacato cuando su testimonio es pertinente a una investigación legislativa, ya que el poder investigativo carecería de sentido de no tener algún mecanismo para compeler la entrega de lo requerido. McGrain v. Daugherty, 273 U.S. 135 (1927).  En Puerto Rico este poder legislativo está reconocido estatutariamente en el Código Político, Arts. 31-35 (2 L.P.R.A. secs. 151-155).

[38]  El desacato civil, puede ser impuesto dentro de una acción civil ordinaria, con debida notificación y adecuada oportunidad para ser

libertad, por lo cual han de reconocerse unos requisitos fundamentales mínimos en dichos procedimientos, corolarios del debido proceso de ley en su dimensión constitucional. Pérez v. Espinosa, 75 D.P.R. 777, 781 (1954); Gompers v. Bucks Stove & Range Co., *supra*, a la pág. 442 (1911).

En este contexto es preciso recordar que nuestra cláusula del debido proceso de ley encuentra su homóloga en la garantía reconocida en las Enmiendas V y XIV de la Constitución federal, y que las protecciones que otorga la cláusula federal constituyen el mínimo de protección que estamos llamados a reconocer bajo nuestra propia Carta de Derechos. Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992).

Por lo tanto, al delinear los contornos que el debido proceso de ley requiere se salvaguarden en un procedimiento de desacato civil, es necesario que examinemos nuestra jurisprudencia, así como la federal, para determinar cuáles son los requisitos mínimos, de naturaleza constitucional, que deben garantizarse. **Por tratarse de requisitos constitucionales, los mismos aplican a todo desacato civil, independientemente que lo motive conducta ante el tribunal o ante la Asamblea Legislativa.** Aunque se ha reconocido que el procedimiento a seguirse es uno flexible, y las protecciones procesales serán dictadas por la naturaleza particular de cada caso, Harris v. City of Philadelphia, 47 F.3d 1333 (1995), el mismo debe mantenerse dentro de los parámetros del debido proceso de ley. Mercer v. Mitchell, 908 F.2d 763 (1990).

En primer lugar la jurisprudencia reconoce que la parte a la que se le imputa un desacato civil tiene derecho a que se le notifique de las alegaciones, se le advierta de su derecho a representación legal, se le otorgue tiempo adecuado para preparar su defensa, y a que se

oído. Por el contrario, el desacato criminal, cuya sanción es de naturaleza punitiva, se considera un delito en el sentido ordinario, y no puede imponerse a menos que se observen todas las salvaguardas constitucionales exigibles en los procesos de naturaleza penal. International Union v. Bagwell, 114 S.Ct. 2552 (1994).

celebre una vista evidenciaria. En dicha vista la parte promovente tiene el peso de demostrar mediante prueba clara y convincente que el imputado incumplió con la orden del tribunal. Una vez cumplida con esta demostración de violación *prima facie*, el peso de la prueba se altera, y corresponde al imputado presentar evidencia que excuse su incumplimiento. Chairs v. Burgess, 143 F.3d 1432 (1998).

La vista evidenciaria, como mínimo, debe ofrecer al imputado la oportunidad de poder explicar por qué no se debe imponer el desacato, a la vez que le permita establecer un récord adecuado para revisión apelativa. Harris v. City of Philadelphia, *supra.* Además debe permitirle demostrar que no violó la orden emitida, o que estaba excusado de cumplirla, o cualquier otra defensa pertinente. E.E.O.C. v. Local 638, 753 F.2d 1172 (1985); A.C.L.I. Government Securities Inc. v. Rhoades, 989 F. Supp 462 (1997), 159 F. 3d 1345 (1998). Entre las circunstancias atenuantes al incumplimiento, se han reconocido la buena fe, la imposibilidad de cumplimiento y el cumplimiento sustancial. Washington Metropolitan Transit Authority v. Amalgamated Transit Union, 531 F.2d 617 (1976).

Podrá obviarse la celebración de la vista evidenciaria e imponerse el desacato civil de modo sumario, **solamente** en aquellos casos en que no hay controversia de hechos. U.S. v. City of Yonkers, 856 F.2d 444 (1988); Morales Feliciano v. Parole Board of Puerto Rico, 887 F.2d 1 (1989); y al igual que en los casos de desacato criminal, en aquellos casos en que el incumplimiento haya ocurrido en presencia del tribunal. U.S. v. McVeigh, 896 F. Supp 1549 (1995).

Nuestra jurisprudencia, así como la federal, ha tenido la oportunidad de examinar la imposición de desacato por incumplir los requerimientos de la Rama Legislativa. Dentro del contexto específico de los desacatos de origen legislativo, dicha jurisprudencia reconoce que deben garantizarse unos requisitos mínimos del debido proceso de ley.

En <u>Hernández Agosto</u> v. <u>Betancourt</u>, 118 D.P.R. 79, 85 (1986), dictaminamos que antes de declarar incurso en desacato a un testigo, al amparo del Artículo 34-A del Código Político, **"el tribunal tiene que ofrecerle una oportunidad adecuada para defenderse"**.

De igual modo, los tribunales federales también han elaborado una normativa sobre la imposición de desacato por incomparecer, o rehusar contestar a preguntas de las comisiones legislativas. En <u>Watkins</u> v. <u>U.S</u>., 354 U.S. 178, 214-15 (1957), el Tribunal Supremo federal determinó que, al revisar una convicción por desacato de un testigo que rehusó contestar las preguntas de una comisión legislativa, correspondía al tribunal examinar si la investigación estaba relacionada a un propósito legislativo válido,[39] si el reglamento de la comisión autorizaba a compeler testimonio, y si las preguntas eran pertinentes al propósito de la investigación. *Véase además,* <u>US</u> v. <u>Orman</u>, 207 F.2d 148 (1953).

Como regla general, un testigo ante una comisión investigativa debe acatar los procedimientos de la comisión y no tiene derecho a

---

[39] Es por esta razón que en una vista de desacato, el imputado puede presentar como defensa que la resolución que creó la Comisión es inconstitucional o nula, por ser extremadamente amplia o ambigua, o porque existen serias dudas de si se trata de un asunto sobre el cual el Congreso tendría facultad para legislar. <u>Tenney</u> v. <u>Brandhove</u>, 341 U.S. 367, 379-80 (1951), Opinión Concurrente del Juez Black.

Un examen de la Resolución que creó la Comisión Especial sobre el Cerro Maravilla demuestra que la misma quedó constituida de un modo constitucional y válido, y que dicha Comisión, al requerir la comparecencia del licenciado Rivera Cruz, estaba dentro del marco de las labores y facultades a ella delegadas. Resolución del Senado Núm. 18 de 30 de enero de 1997.

La Regla Número 1-CH del Reglamento aprobado por la Comisión Especial específicamente autoriza al Presidente de la Comisión a expedir citaciones a testigos para que presten declaración y/o entreguen documentos según lo dispuesto en los artículos 31 y 34-A del Código Político. La Regla Número 2-E establece el procedimiento a seguirse para que en aquellos casos que un testigo debidamente citado no comparezca, o comparezca pero se niegue a entregar la información solicitada o a contestar una o más preguntas del Oficial Examinador, el Presidente de la Comisión pueda instar la correspondiente acción legal ante el foro judicial para obligar al testigo a cumplir con lo requerido. *Véase además*, Regla 4 (A),(B) y (C) respecto a citaciones y comparecencias.

Coincidimos con la Opinión del Tribunal respecto a que la alegación del licenciado Rivera Cruz de que la Comisión Especial no estaba legalmente autorizada y carecía de un fin legítimo, es inmeritoria.

imponer condiciones para testificar. U.S. v. Orman, *supra*. Tampoco se releva de desacato el deponente por el mero hecho de haber dado una explicación para no contestar, o haber objetado la pregunta o su propiedad. Quinn v. U.S., 349 U.S. 155 (1955). Emspak v. U.S., 349 U.S. 190 (1955). Sin embargo, el debido proceso de ley requiere que, a solicitud del testigo, la comisión investigativa le informe en qué aspecto las preguntas o documentos requeridos, son pertinentes al asunto bajo investigación. Scull v. Com. of VA ex rel Committee on Law Reform and Racial Relations, 359 U.S.344 (1959).

Un análisis de la normativa expuesta anteriormente demuestra que existen unas garantías mínimas que el debido proceso de ley exige se salvaguarden en todos los procesos de desacato civil, independientemente de su origen judicial o legislativo. Como mínimo se requiere adecuada notificación y la celebración de una vista en la que el imputado pueda presentar adecuadamente sus defensas. De igual modo, un análisis de la disposición legal pertinente refleja que el Artículo 34-A expresamente le otorga al imputado el derecho a una vista y a presentar en dicha vista las defensas de hecho y de derecho pertinentes.

Como corolario del derecho a defenderse, tanto en su dimensión constitucional como estatutaria, surge el derecho de poder descubrir aquella evidencia pertinente y exculpatoria, que no sea privilegiada. Privar a un imputado de desacato al amparo del Artículo 34-A del Código Político, del derecho a descubrir prueba pertinente a su defensa, atenta no tan sólo contra su debido proceso de ley, sino que rendiría inoperante el derecho a defenderse que expresamente le concede el estatuto.

Reiteradamente hemos reconocido que el descubrimiento de prueba es el mecanismo adecuado para facilitar la consecución de evidencia por las partes. Su incorporación en nuestro ordenamiento procesal obedece a la necesidad de ofrecer a las partes la oportunidad de obtener información

pertinente al asunto en controversia que pueda facilitar el desarrollo del proceso, y promover la búsqueda de la verdad. Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959); Rafael Hernández Colón, Manual de Derecho Procesal Civil sec. 2801 (1981).

Por tal razón consideramos que actuó correctamente el Tribunal de Circuito de Apelaciones al garantizarle al  licenciado Rivera Cruz un descubrimiento de prueba en el cual pudiera descubrir **toda prueba pertinente a sus defensas legítimas, que no fuera privilegiada.** Decidir lo contrario atentaría no tan sólo contra la letra y el espíritu del Artículo 34-A del Código Político, sino que violaría los requisitos mínimos que el debido proceso de ley exige para una vista de desacato civil.

La Opinión del Tribunal, aunque reconoce que el Artículo 34-A(3) permite al imputado levantar las defensas constitucionales, legales y fácticas pertinentes en la vista de desacato, sostiene que esto no abre el proceso a un descubrimiento de prueba ordinario, califica de extraordinario la naturaleza del proceso a seguirse en dicha vista por tratarse de un desacato de origen legislativo, y por ende modifica la determinación del foro apelativo.

Aunque reconocemos que los desacatos de origen legislativo deben de tramitarse con premura y expeditamente, esto no puede llevarnos a obviar los requisitos mínimos establecidos por el Artículo 34-A y por el debido proceso de ley. El reconocer un descubrimiento de prueba amplio, utilizando supletoriamente las Reglas de Procedimiento Civil, no conlleva necesariamente una dilación inaceptable del recurso. Las propias Reglas de Procedimiento Civil otorgan al tribunal la facultad para acortar los términos del descubrimiento de prueba según las circunstancias del caso lo ameriten. Regla 23.4 de Procedimiento Civil. 32 Ap. III R. 23.4.  Machado Maldonado v. Barranco Colón, 119 D.P.R. 563 (1987).  Lluch v. España Service Sta., 117 D.P.R. 729 (1986).

Hemos examinado la jurisprudencia en que descansa la Opinión del Tribunal para aseverar que no se favorece el descubrimiento de prueba,

específicamente prueba documental, en los procesos de desacato. La norma citada se refiere exclusivamente a aquellos desacatos que pueden imponerse de modo sumario, por no haber controversia sobre los hechos, o porque el tribunal, después de haber analizado las defensas alegadas por el imputado, determina que de su faz, las mismas son inmeritorias en derecho. FTC v. Browning, 435 F. 2d 66, 101-103 (1970).

Dicha jurisprudencia reconoce que aun en aquellos casos en que procede hacer la determinación del desacato de modo sumario, pueden existir circunstancias extraordinarias que favorezcan el descubrimiento. También aclara que de existir controversia sobre los hechos relevantes al incidente del desacato o a las defensas a interponerse, el tribunal debe permitir un descubrimiento adecuado. FTC v. Carter, 636 F. 2d. 781, 789 (1980); U.S. v. Exxon, 628 F. 2.2d 70 (1980); FTC v. Browning, *supra*.

Un examen de los autos revela que **entre las defensas legítimas** que aduce el licenciado Rivera Cruz, hay algunas que requieren dilucidar unos hechos en controversia. Es necesario, en virtud del debido proceso de ley, y de las disposiciones del artículo 34-A, garantizarle al imputado oportunidad adecuada para que demuestre al tribunal si existía causa justificada para incumplir con la orden emitida.

Entre **las defensas legítimas** presentadas por el  licenciado Rivera Cruz se encuentra la determinación de si en efecto la Comisión Especial, en contravención de la  Regla 2-B del Reglamento de la Comisión Especial, de la Regla 14.8 del Reglamento del Senado y de las Secs. 1 y 8 del Artículo II de nuestra Constitución, incurrió en conducta que violó la dignidad e integridad del licenciado Rivera Cruz.[40]

---

[40] La Regla 2(B) del Reglamento de la Comisión Especial dispone:
"Los Oficiales Investigadores velarán que se respete la dignidad y la reputación de los testigos durante el interrogatorio".
La Regla 14.8 del Reglamento del Senado dispone:
"La Comisión velará que en el desempeño de sus responsabilidades, los oficiales investigadores respeten la dignidad y la reputación de los individuos e instituciones con las que intervengan".
Las Secs. 1 y 8 del Art. II de nuestra Constitución rezan:

Coincidimos con lo expresado en la Opinión del Tribunal de que la dignidad de las personas debe ser respetada en todo momento y en todo lugar, y que los derechos constitucionales de los deponentes no desaparecen por el mero hecho de tener que comparecer ante el foro legislativo. Consideramos que una violación a la dignidad y honra de un deponente ante una comisión legislativa, constituye causa justificada para negarse a comparecer y declarar.

Entendemos que también debe ofrecerse oportunidad al licenciado Rivera Cruz a presentar prueba sobre su alegación de que la Comisión Especial no estaba debidamente constituida por no haber permitido adecuada participación a los miembros de las minorías al no proveerle oportuna notificación y acceso a la información y documentos relativos a la investigación. _Silva_ v. _Hernández Agosto_, 118 D.P.R. 45 (1986). Debemos recordar que en _Hernández Agosto_ v. _Betancourt_, _supra_, resolvimos que no procedía encontrar incurso en desacato a unos testigos que rehusaron comparecer ante una comisión legislativa, cuando dicha comisión no estaba debidamente constituida por no haberse respetado la participación de los miembros de las minorías.

Aun más, el Art. 34-A(3) expresamente le otorga al imputado el derecho a presentar aquellas defensas de hecho y de derecho que puedan justificar su incumplimiento con la orden del tribunal. La disposición citada no limita la celebración de la vista y la oportunidad de presentar sus defensas a aquellas ocasiones en que exista controversia de hechos. No podemos, como hace la mayoría, acudir a decisiones de tribunales en Estados Unidos para subvertir o constreñir el alcance de nuestro estatuto. Dicha disposición reconoce unas garantías a la ciudadanía, en cuanto a su derecho a ser oído y defenderse, que no están necesariamente reñidas con la celeridad y prontitud que requiere la resolución de una imputación de desacato en el contexto legislativo.

---

"Sec. 1--La dignidad del ser humano es inviolable.
Sec. 8--Toda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar".

Somos de la opinión que el licenciado Rivera Cruz tiene derecho a un descubrimiento de prueba adecuado para poder presentar en la vista de desacato, según lo dispone el Artículo 34-A del Código Político, **aquellas defensas legítimas que justifiquen su incumplimiento con la orden del tribunal.** De igual modo, los requerimientos del debido proceso de ley, que limitan la imposición de desacato de modo sumario sólo a aquellos casos en que no exista controversia real sobre los hechos o que ocurran en presencia del tribunal, exigen que se le conceda al licenciado Rivera Cruz oportunidad de descubrir toda aquella prueba pertinente y no privilegiada que le asista en la presentación de sus **defensas legítimas.**

**Nuestra posición no concede al licenciado Rivera Cruz derecho a un descubrimiento de prueba irrestricto. De los documentos solicitados, hay algunos que no tienen relevancia a las defensas legítimas, que de acuerdo a lo pautado en la Opinión del Tribunal, asisten al licenciado Rivera Cruz. Independientemente de si tales documentos están o no cobijados por el privilegio evidenciario de la Cláusula de Inmunidad Parlamentaria, el licenciado Rivera Cruz no tiene derecho a su descubrimiento, pues no cumplen con el requisito de umbral de ser pertinentes a una de las defensas legítimas que le asisten.**

Concluimos pues, que en el caso de autos, en el que existe controversia de hechos sobre algunas de las **defensas legítimas** alegadas por el licenciado Rivera Cruz, y en el que la disposición legal pertinente expresamente ordena la celebración de una vista para que el imputado presente sus defensas, fue correcta la determinación del Tribunal de Circuito de Apelaciones al conceder al licenciado Rivera Cruz el derecho a descubrir **toda aquella prueba pertinente a sus defensas legítimas que no sea materia privilegiada.**

III

Habiendo determinado el alcance del descubrimiento de prueba al que tiene derecho el licenciado Rivera Cruz en la vista a celebrarse al amparo del Art. 34-A del Código Político, nos corresponde examinar el argumento del Senado respecto a la aplicación, al caso de autos, del privilegio de inmunidad legislativa.

El Senado en su comparecencia reclama que las citaciones y documentos solicitados por el licenciado Rivera Cruz, a excepción de los documentos a ser presentados por el Senado en la vista de desacato, están cobijados por la Cláusula de Inmunidad Parlamentaria. Debemos examinar, en primer lugar, cuál es el alcance de la Cláusula de Inmunidad Parlamentaria en el contexto del descubrimiento de prueba a concederse al amparo del Art. 34-A del Código Político. En segundo lugar, debemos determinar cuál debe ser el procedimiento a seguirse ante un reclamo por la Asamblea Legislativa del privilegio de inmunidad parlamentaria.

Para evaluar adecuadamente el señalamiento del Senado es conveniente que examinemos a modo ilustrativo, la jurisprudencia federal que analiza el alcance de la Cláusula de Inmunidad Parlamentaria en el contexto de descubrimiento de prueba, ya que el planteamiento es uno novel en nuestra jurisdicción.[41]

---

[41] En Silva v. Hernández Agosto, *supra,* aclaramos que nuestra cláusula de Inmunidad Parlamentaria fue adoptada basada en la experiencia norteamericana y en la disposición similar contenida en la Constitución de los Estados Unidos, Art. I Sec. 6. Nuestro ordenamiento constitucional le ha reservado un amplio campo al privilegio de inmunidad parlamentaria, al menos tan amplio como se le reconoce en la jurisprudencia de Estados Unidos. In re Rodríguez Torres, 106 D.P.R. 698, 721. (1978). Por esta razón, a manera ilustrativa, procede estudiar las interpretaciones dadas por los tribunales federales. Peña Clos v. Cartagena, 114 D.P.R. 576 (1983).

Los tribunales federales han reconocido que un proceso de descubrimiento de prueba puede ser tan intrusivo en el desempeño de las labores legislativas como lo sería el tener que defenderse en una demanda, por lo cual han resuelto que el privilegio evidenciario debe tener el mismo alcance que el privilegio sustantivo de inmunidad.[42] Minpeco S.A. v. Conticommodity Services, Inc., 844 F. 2d 856 (1988); Brown and Williamson Tobacco Corporation v. Merrell Williams, *supra*; 2BD Associates Limited Partnership v. County Commissioners for Queen Anne´s County, 896 F. Supp 528 (1995).

Por tal razón han determinado que para que el privilegio aplique no es necesario que el legislador haya sido demandado, tampoco es necesario requerir una demostración *prima facie* de que la carga impuesta por el descubrimiento de prueba constituye una interferencia impermisible del tribunal en sus asuntos legislativos. Minpeco S.A., *supra.*

Aun en aquellos casos en que el requerimiento de documentos no interfiera directamente con las actividades que los legisladores están llevando a cabo, se considera que el poner en vigor dicho requerimiento equivale a un interrogatorio sobre actos legislativos, lo cual es inconsistente con el propósito de la Cláusula de Inmunidad Parlamentaria de proteger la integridad legislativa. Miller v. Transamerican Press, Inc., 709 F.2d 524 (1983). Además, se ha llegado

---

[42] La Cláusula de Inmunidad Parlamentaria se desdobla en dos vertientes. Por un lado ofrece a sus titulares un privilegio sustantivo de inmunidad de encausamiento criminal o civil por aquellas actuaciones que puedan ser calificadas como actos legislativos, y un privilegio evidenciario, testifical y documental, que prohibe el uso, en otros foros, de declaraciones o documentos que sean parte del proceso legislativo. Rotunda and Novak, Treatise on Constitutional Law, 2d Ed. sec.8.8 ( Supp. 1999).
Respecto al alcance del privilegio evidenciario en el contexto del descubrimiento de prueba existen dos interpretaciones. Las cortes federales del Tercer Circuito restringen la protección a una de exclusión de evidencia. Por su parte, las cortes federales del Circuito del Distrito de Columbia definen el alcance del privilegio evidenciario como uno de exclusión de evidencia y de confidencialidad. In re Grand Jury Investigation, 587 F. 2d 589 (1978); Minpeco, S. A. V. Conticommodity Services, Inc., *supra*; Brown and Williamson Tobacco Corp. v. Williams, *supra*.

a la conclusión de que una Asamblea Legislativa no puede funcionar adecuadamente cuando está asediada por requerimientos de prueba por terceros. Minpeco S.A., *supra,* a las págs. 859-61.

Dichos foros judiciales han enfatizado que al examinar un requerimiento para inspeccionar y copiar documentos en poder de un comité legislativo, el grado de intromisión y onerosidad del requerimiento es inmaterial. Aun en aquellas situaciones en que la distracción fuese mínima, lo determinante es examinar si se trata de material protegido por la cláusula. Se ha rechazado adoptar una posición que requiera un examen judicial que calibre cuál es el grado de intrusión al que se sometería una comisión legislativa ante un requerimiento de documentos. Minpeco S.A., *supra,* a la pág. 860.

De la normativa anteriormente esbozada surge con meridiana claridad que ante un reclamo para citar testigos que sean miembros o funcionarios de una comisión legislativa, o para requerir la entrega compulsoria de documentos o transcripciones en poder de las cámaras o comisiones, el criterio a utilizarse al determinar si lo solicitado está protegido por la Cláusula de Inmunidad Parlamentaria es examinar si se trata de declaraciones o documentos relacionadas con actuaciones legislativas legítimas. De concluir en la afirmativa, la protección es de aplicación. Gravel v. U.S., *supra* a la pág. 625 (1972); Drombowski v. Eastland, 387 U.S. 82 (1967); Powell v. McCormack, 395 U.S. 486 (1969); Santa v. Srio. del Senado, *supra;* Eastland v. United States Servicemen's Fund, supra, págs. 503-504; Doe v. McMillan, 412 U.S. 306, 312-313 (1973).[43]

---

[43] Como todo derecho y todo poder, la Cláusula de Inmunidad Legislativa no es absoluta, y corresponde a los tribunales, y no al Poder Legislativo, definir sus contornos. Santa Aponte v. Srio. del Senado, 105 D.P.R. 750, 764 (1977); Hutchinson v. Proxmire, 443 U.S. 111, 125-133 (1979); Gravel v. United States, 408 U.S. 606, 625 (1972); Tenney v. Brandhove, 341 U.S. 367, 376-377 (1951). Romero Barceló v. Hernández Agosto, *supra.*

El privilegio legislativo no protege aquella actividad realizada por un legislador que cae fuera del ámbito de la actividad legislativa legítima. En este contexto, la jurisprudencia federal reciente ha distinguido entre aquellas funciones legislativas que son parte inherente al debido funcionamiento del proceso legislativo, y aquellas

Coincidimos con la Opinión del Tribunal en cuanto al propósito, ámbito y rango constitucional del privilegio de inmunidad parlamentaria consagrado en el Art. II sec. 14 de nuestra Constitución. También estamos conformes con su determinación de que dicho privilegio, además de consagrar un derecho de inmunidad sustantiva para aquellos actos llevados a cabo por los miembros[44] de la Asamblea Legislativa que son actos legislativos legítimos, ofrece la protección de un privilegio evidenciario que cobija, de requerimiento compulsorio ante cualquier otro foro que no sea el legislativo, declaraciones o documentos que sean parte del proceso legislativo.

Sin embargo, disentimos de la Opinión del Tribunal en cuanto al criterio utilizado al determinar cuáles documentos están protegidos por el privilegio legislativo y cuáles son descubribles. Nuestra discrepancia obedece a que, aunque la Opinión del Tribunal concluye correctamente que al determinar qué está cobijado por el privilegio el criterio medular es la distinción entre actos legislativos y actos no legislativos, introduce un criterio adicional al disponer cuáles

---

actividades que, aunque relacionadas al proceso legislativo, son de naturaleza política. Estas últimas no están protegidas por la Cláusula de Inmunidad Parlamentaria. U.S. v. Brewster, 408 U.S. 501, 528 (1972). También ha aclarado que el mero hecho de que un legislador lleve a cabo un acto en su capacidad oficial, no hace de ese acto un acto legislativo. Gravel v. U. S., *supra*.

Al establecer los parámetros para definir lo que debe considerarse como actos legislativos legítimos, el Tribunal Supremo federal ha excluido de la protección de la cláusula actuaciones tales como expresiones difamatorias hechas por legisladores, fuera del ámbito de las cámaras o comisiones, en actividades que no son esenciales a las funciones legislativas. Hutchinson v. Proxmire, 443 U.S. 111 (1979); el aceptar sobornos, U.S. v. Brewster, *supra* y otras violaciones a estatutos penales. Gravel v. U.S., *supra*; U.S. v. Heltoski, *supra.*

[44] La Cláusula de Inmunidad Parlamentaria protege a los legisladores, así como a los ayudantes legislativos, cuando éstos llevan a cabo actividades legislativas legítimas. Gravel v. U.S., *supra*. También aplica a toda conducta legislativa legítima que ocurrió mientras el titular del privilegio era miembro de la Asamblea Legislativa, independientemente de que al reclamar el privilegio ya haya cesado en sus funciones. Miller v. Transamerican Press Inc., supra.

La Cláusula de Inmunidad Parlamentaria protege a los legisladores de tener que responder por sus actuaciones legislativas legítimas ante otros foros. Sin embargo, la cláusula constitucional no es un impedimento para que la Asamblea Legislativa examine o cuestione el comportamiento de sus miembros o funcionarios, independientemente de si

documentos son descubribles, al diferenciar entre documentos públicos y documentos confidenciales.

No podemos suscribir el criterio que adopta la mayoría para adjudicar si el documento es o no descubrible, al amparo de la Cláusula de Inmunidad Parlamentaria, en cuanto a que descansa, como criterio adicional, en la diferencia entre documentos públicos o confidenciales. Sin embargo, sí coincidimos con su determinación de que aquellos documentos cuya divulgación esté expresamente autorizada por el Reglamento de la Comisión Especial o por el Reglamento del Senado, aun de tratarse de documentos cobijados por el privilegio evidenciario de la Cláusula de Inmunidad Parlamentaria, son descubribles. Nos explicamos.

Como hemos señalado y como correctamente determina la mayoría, el criterio al determinar el ámbito de la Cláusula de Inmunidad Parlamentaria en su vertiente evidenciaria, es el mismo que en su vertiente de inmunidad sustantiva. El privilegio protege solamente aquellas comunicaciones que forman parte del proceso legislativo legítimo.

Por su parte la palabra "público", según aplica a documentos, se refiere a aquellos documentos generados por el Estado en su función gubernamental y el término no indica necesariamente publicidad en contraposición a secreto. Ley de Administración de Documentos Públicos de Puerto Rico, Artículo 1 de la Ley Núm. 63 de 4 de junio de 1979, 3 L.P.R.A. Sec. 1001(b).[45]

---

son miembros activos o ya han cesado sus términos. U.S. v. Brewster, 408 U.S. 501, 563 (1972).

[45] Se considera documento público: *Todo documento que se origine, conserve o reciba en cualquier dependencia del Estado de acuerdo con la ley o en el manejo de los asuntos públicos y que se haya de conservar permanente o temporalmente como prueba de las transacciones o por su utilidad administrativa, valor legal, fiscal, cultural o informativo, segun sea el caso, o que se haya de destruir por no tener ni valor permanente, ni utilidad administrativa, legal, fiscal, cultural o informativa, y una copia de todas las publicaciones de las dependencias gubernamentales. También se entenderá por documento público todo documento que expresamente así se declare por cualquier ley vigente o que en el futuro se apruebe. 3 L.P.R.A. Sec. 1001(b).*

Nuestro estado de derecho reconoce una dimensión constitucional al derecho de los ciudadanos a tener acceso a los documentos generados por el Estado en sus gestiones oficiales. También hemos reconocido que el legislador tiene facultad para dictaminar expresamente qué documentos públicos tendrán carácter confidencial, siempre y cuando tales limitaciones se mantengan dentro de los parámetros constitucionales esbozados por nuestra jurisprudencia. Soto v. Srio. de Justicia, 112 D.P.R. (1982); Dávila v. Superintendente de Elecciones, 82 D.P.R. 264, 282 (1960); Santiago v. Bobb y El Mundo, Inc., 117 D.P.R. 153 (1986).

El Art. 409 del Código de Enjuiciamiento Civil, 3 L.P.R.A. sec. 1781, aún vigente, dispone que los documentos públicos podrán ser examinados y copiados salvo lo expresamente dispuesto en contrario por ley. En Santiago v. Bobb y El Mundo, Inc, *supra*, reconocimos que, respecto a dichos documentos, un reclamo de confidencialidad por el Estado sólo puede prosperar en un limitado número de supuestos. Entre dichos supuestos se encuentran el que una ley declare el documento como confidencial, y el que se trate de materia cobijada por los privilegios evidenciarios.

Nuestra ley suprema, la Constitución, reconoce un privilegio evidenciario para los documentos generados y recopilados por las cámaras legislativas y sus comisiones en aquellas gestiones definidas como actos legislativos legítimos. El privilegio aplica independientemente de que el documento sea clasificado como récord público o documento confidencial. En ninguno de ambos casos puede ser requerido compulsoriamente de la Asamblea Legislativa.

Una vez se llega a la determinación que el documento solicitado es parte del proceso legislativo legítimo y está cobijado por el privilegio constitucional, el documento es descubrible sólo de mediar una autorización expresa de la Asamblea Legislativa. Dicha autorización puede ser mediante una renuncia al privilegio en ese momento,[46] o a

---

[46] La Asamblea Legislativa puede renunciar al privilegio y voluntariamente entregar los documentos solicitados. Sin embargo tal

través de lo dispuesto respecto al acceso a documentos legislativos en el Reglamento de la Comisión Especial, el Reglamento del Senado y el Reglamento para Establecer el Programa de Administración de Documentos Públicos del Senado de Puerto Rico. Reglamento de la Comisión Especial, Reglas Núm. 2(B)y (D), 5, 7, 8(B)y(CH), 12(B), 14; Reglamento del Senado, R. del S. 13 de 16 de enero de 1997, Regla 14; Reglamento para Establecer el Programa de Administración de Documentos Públicos del Senado de P.R., Reglamento Número 13 de 15 de julio de 1988, Segunda Parte, Artículo VI, Cuarta Parte, Artículo I.[47]

Las cortes federales han tenido la oportunidad de enfrentarse a situaciones similares a la de autos.  En este contexto han determinado que el hecho de que un acto legislativo haya sido memorializado en un récord publico no deja inoperante la protección de la Cláusula de Inmunidad Parlamentaria, y evidencia de dichos actos está protegida de requerimiento compulsorio, aunque conste en un documento público.  U.S. v. Swindall, 971 F. 2d 1531, 1550 (1992).

Dichos tribunales también han determinado que, al amparo de la Cláusula de Inmunidad Parlamentaria, el hecho de que los documentos solicitados en un descubrimiento de prueba hubiesen sido generados en una reunión "a puerta cerrada" de una comisión legislativa, no es un factor a considerarse al momento de evaluar la aplicación del privilegio.  2BD Associates Limited Partnership v. County Commissioners for Queen Anne´s County, *supra*.  En dicha ocasión el tribunal reiteró

---

renuncia del privilegio debe de ser explícita e inequívoca. U.S. Heltoski, *supra.*

[47]   La Ley de Administración de Documentos Públicos de Puerto Rico, 3 L.P.R.A. secc. 1001-13, dispone un programa para la administración de documentos públicos en la tres ramas de gobierno. En cuanto a los documentos de la Rama Legislativa se faculta al Presidente del Senado o a su representante autorizado, y al Presidente de la Cámara o a su representante autorizado, a publicar listas de los documentos públicos, que por razón de su contenido deberán ser considerados confidenciales, los cuales no estarán sujeto a ser inspeccionados. Sec. 1002 (a) y (b)(2).
    En virtud de dicha autorización el Senado adoptó el Reglamento para Establecer el Programa de Administración de Documentos Públicos del Senado de Puerto Rico, Reglamento Número 13 de 15 de julio de 1988.

que el criterio a utilizarse es el de actos legislativos legítimos, y en interés de permitir a la ciudadanía el mayor acceso posible a los documentos generados por las ramas gubernamentales, permitió el descubrimiento de aquellos documentos que, aunque generados en reuniones a puerta cerrada de una comisión legislativa, no estuviesen protegidos por el privilegio de inmunidad parlamentaria.

Utilizando el criterio de "proceso legislativo legítimo" concluimos que aquellos documentos que no forman parte del proceso legislativo legítimo, no están cobijados por la Cláusula de Inmunidad Parlamentaria, independientemente de su clasificación como documento público o confidencial.[48] De igual modo, aquellos documentos que forman parte del proceso legislativo legítimo, están cobijados por el privilegio evidenciario de la Cláusula de Inmunidad Parlamentaria y no pueden requerirse compulsoriamente de la Asamblea Legislativa, a menos que el Reglamento de la Comisión Especial o el Reglamento del Senado así lo autoricen.[49]

Por lo anteriormente expuesto, somos del criterio que de aquellos documentos protegidos por el privilegio solamente son descubribles aquellos que por disposición expresa de la propia Asamblea Legislativa están disponibles al público.

IV

Analizado el alcance de la Cláusula de Inmunidad Parlamentaria en el contexto del descubrimiento de prueba, así como el criterio a

---

[48]   No está ante nuestra consideración qué sucedería si dichos documentos estuvieran cobijados de divulgación por otro privilegio evidenciario, o por alguna ley especial. Por tal razón no nos pronunciamos al respecto.

[49] Nada impide que el licenciado Rivera Cruz obtenga de otras fuentes, como lo serían publicaciones en periódicos, videograbaciones de las estaciones de televisión o grabaciones de empresas radiales, información referente a lo que sucedió en las vistas de la Comisión.

Debemos recordar que el propósito fundamental de la Cláusula de Inmunidad Parlamentaria es proteger la integridad y la independencia del proceso legislativo, por lo cual el privilegio evidenciario protege a la Rama Legislativa de un requerimiento compulsorio de documentos y de citaciones a sus miembros. La alternativa de obtener prueba exculpatoria por otros medios, cumple con el propósito de permitir al licenciado Rivera Cruz presentar prueba que permita al tribunal de

utilizarse al determinar cuáles documentos están cobijados por la cláusula, nos corresponde examinar cuál debe ser el procedimiento a seguirse ante un reclamo por la Asamblea Legislativa de la aplicación del privilegio en su vertiente evidenciaria.

Somos del criterio que corresponde al tribunal de instancia, determinar qué documentos son privilegiados y cuáles son descubribles. No podemos refrendar la Opinión del Tribunal en cuanto adjudica, de modo sumario, cuáles de los documentos solicitados por el licenciado Rivera Cruz, están excluidos de descubrimiento por estar cobijados por la Cláusula de Inmunidad Parlamentaria.

Reiteradamente hemos reconocido que, de ordinario, lo que procede en casos como el de autos, es devolver el recurso al tribunal sentenciador para que continúe con los procedimientos según los parámetros expresados por esta Curia. Solamente en contadas excepciones, y por razón de tener ante nos el documento cuya naturaleza privilegiada hay que determinar, hemos obviado el trámite ordinario de devolver el recurso al tribunal de instancia. López Vives v. Policía de P.R., 118 D.P.R. 219, 235 (1987), Soto v. Sro. de Justicia, *supra.*

No tenemos ante nos los documentos en controversia. El Senado, en su comparecencia, enumera los documentos solicitados y arguye, sin mayor explicación o detalle, que están cobijados por el privilegio de inmunidad parlamentaria por tratarse de documentos relativos al quehacer legislativo. No podemos, en aras a la economía procesal, o en interés de resolver expeditamente este recurso, obviar el trámite de que sea el tribunal de instancia, **en el ejercicio de una discreción informada**, quien determine cuáles documentos son descubribles.

Este ha sido el procedimiento refrendado por los tribunales federales así como por nuestra jurisprudencia. Las cortes federales han determinado que al adjudicar un reclamo de privilegio por la Asamblea Legislativa, corresponde a la parte que sostiene el privilegio preparar

instancia determinar si la conducta del imputado es constitutiva de desacato, sin atentar contra la independencia del poder legislativo.

un índice de los documentos solicitados que considera privilegiados, por formar parte integral del proceso deliberativo y comunicativo de las cámaras o comisiones y sus ayudantes.[50]  In re Possible Violations of U.S.C. ss., 201, 371, 491 F Supp 211 (1980); In re grand Jury Investigations, 587 F 2d 589, 597 (1978).

En dicho índice, la Asamblea Legislativa debe explicar por qué el documento es privilegiado.  Aunque la explicación puede ser sucinta, debe de contener la información necesaria para que el tribunal determine que el reclamo de privilegio es legítimo.

Sometido el índice, corresponde al tribunal determinar si el reclamo del privilegio es procedente.  De determinar que los documentos solicitados fueron preparados o recopilados en el curso de una actividad legislativa legítima, el privilegio existe y su protección es absoluta. Si el tribunal determina que del índice preparado le es imposible llegar a una conclusión sobre la aplicación del privilegio a dichos documentos, el tribunal de instancia puede ordenar que se produzcan los documentos para ser inspeccionados por el juez.

Este examen debe ser en cámara, con o sin la participación de la representación legal de las partes.[51]  Aun en aquellas ocasiones en que se haya determinado proceder con un examen en cámara sin la participación de la representación legal de las partes, el debido

---

[50]    El procedimiento de preparar un índice de los documentos alegadamente privilegiados surgió por primera vez en casos al amparo de la Freedom of Information Act, con el propósito de asegurar que el derecho de una parte a obtener información no quedase afectado por la burocracia gubernamental y la posibilidad de falsa representación. Por esta razón los tribunales diseñaron un método que les permitiese verificar el reclamo de privilegio. Vaughn v. Rosen 484 F.2d 820 (1973). La utilización del índice Vaughn, como ha llegado a conocerse, **ha sido expresamente reconocida en casos de reclamo del privilegio de inmunidad parlamentaria.** In re Possible Violations of U.S.C. ss. 201,371, *supra*;  In re grand Jury Investigations, *supra.*

[51]    El examen en cámara es un método altamente apropiado y útil para aquellas situaciones en que hay reclamos de privilegio. Kerr v. U.S. District Court, 426 US 393, 406 (1976). A igual conclusión hemos llegado en nuestra jurisdicción. Soto v. Srio. de Justicia, *supra*; López Vives v. Policía de P.R., *supra*; Santiago v. Bobb y El Mundo, Inc., *supra.*

proceso de ley exige que se dé una oportunidad posterior a las partes de cuestionar, en derecho, la decisión del tribunal.

En nuestra jurisdicción refrendamos un procedimiento similar en Soto v. Secretario de Justicia, *supra*. En aquella ocasión exigimos al Secretario de Justicia que preparara una relación de los documentos en su poder relativos a una investigación. Dicha relación debía identificar adecuadamente los documentos, y aunque no exigimos una descripción del contenido, exigimos que dicha relación especificase la razón particular para no divulgarlo. Dispusimos que este listado fuese examinado en cámara por el juez de instancia sin participación de las partes y sus abogados. Soto, *supra*, a las págs. 504-505. Estamos convencidos que igual procedimiento debe imponerse en el caso de autos, ya que son varias las ventajas que ofrece.

En primer lugar, permite al tribunal verificar el reclamo de privilegio para ejercer, de modo informado, su tarea constitucional de determinar qué materia es o no privilegiada, como árbitro final de la controversia entre las partes. Por otro lado responde a la necesidad de no permitir que sea la propia Asamblea Legislativa quien sea árbitro absoluto y final de lo que es materia privilegiada. Gravel v. U.S., *supra,* a la 624; Tenney v. Brandhove, *supra* a la 376-377; Benford v. American Broadcasting Co. Inc., 98 F.R.D. 42, (1983).

Anteriormente, al enfrentarnos a la necesidad de determinar la validez de un reclamo de privilegio por el Estado resolvimos que:

> [E]n esta gestión el tribunal puede hacer un examen en cámara de los documentos o información que el Estado alega son privilegiados, como condición previa al reconocimiento del privilegio. Santiago v. Bobb y El Mundo, Inc. supra a la pág 162.

Con esta aseveración reiteramos la norma vigente en nuestro esquema constitucional que rechaza la posibilidad de que los cuerpos

legislativos o los funcionarios ejecutivos se conviertan en jueces de sus propios poderes, ya que son los tribunales los intérpretes finales de las leyes y la Constitución. Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 591 (1983).

En segundo lugar, la preparación del índice obliga a la parte que reclama el privilegio a examinar cuidadosamente los documentos requeridos para determinar si en realidad su reclamo de privilegio prosperaría. En este ejercicio le permite considerar la posibilidad de segregar, dentro de un mismo documento, material privilegiado del no privilegiado, lo cual facilita que la parte interesada en el descubrimiento obtenga aquellos segmentos no privilegiados. In re Guthrie v. American Broadcasting Co., 733 F.2d 634 (1983).

Por lo anteriormente expresado, consideramos que corresponde al tribunal de instancia determinar cuáles de las citaciones y documentos solicitados de la Comisión Especial están cobijados por el privilegio de inmunidad parlamentaria, y cuáles son descubribles. En este ejercicio dicho foro tiene el beneficio de la comparecencia de las partes, así como la oportunidad de requerir los documentos para examen, de ser ello necesario, antes de decidir sobre la aplicación del privilegio.

La Opinión del Tribunal modifica la sentencia del tribunal apelativo por considerar que erróneamente ordenó el descubrimiento de ciertos documentos denegados por el tribunal de instancia. Hemos examinado detenidamente la sentencia del Tribunal de Circuito de Apelaciones y hemos llegado a la conclusión de que el tribunal apelativo actuó correctamente, y se abstuvo de determinar cuáles documentos eran descubribles:

> *No resolvemos a qué descubrimiento pueda tener derecho el licenciado Rivera Cruz. En vez, devolvemos el caso al tribunal de Primera Instancia para que sea éste el que determine, conforme a criterios legales adecuados y en conformidad con esta opinión, a cuáles documentos y*

*testigos, si algunos, el licenciado Rivera Cruz tiene derecho. Este Tribunal expide el recurso solicitado, confirma en parte y deja sin efecto en parte la resolución recurrida. Sentencia del Tribunal de Circuito de Apelaciones a la pág. 4.*

El tribunal apelativo se limitó a establecer los parámetros legales correspondientes respecto al descubrimiento de prueba, y ordenó al tribunal *a quo* celebrar una vista con la mayor brevedad posible en la cual examinase la procedencia de las defensas presentadas, y determinase, de acuerdo a los criterios legales de pertinencia y privilegios, a cuáles documentos y testigos, si algunos, tenía derecho el licenciado Rivera Cruz.

Por lo anteriormente expresado confirmaríamos la sentencia del Tribunal de Circuito de Apelaciones y devolveríamos el recurso al tribunal de instancia para que, a la luz de los criterios expresados en esta Opinión, haga la determinación de cuáles documentos y citaciones están protegidas por el privilegio de inmunidad parlamentaria.

V

Por último, examinado el derecho aplicable, concluimos que al licenciado Rivera Cruz le asiste el derecho, al amparo del Artículo 34-A del Código Político y del debido proceso de ley, a presentar en la vista de desacato a celebrarse, **aquellas defensas legítimas que le permitan justificar su incumplimiento con la orden del tribunal**. Tiene derecho, por tanto, a descubrir toda aquella prueba pertinente y no privilegiada que le ayude en la presentación de **dichas defensas legítimas**.

Entre las defensas presentadas en su moción de desestimación hay algunas que a la luz de los parámetros establecidos en esta ponencia, así como en la Opinión del Tribunal, son claramente inmeritorias.

Coincidimos con la Opinión del Tribunal de que las alegaciones del licenciado Rivera Cruz, respecto a que la Comisión Especial carece de un fin legítimo, es improcedente. Coincidimos también con lo expresado por la mayoría de que, ante una investigación de la propia Rama Legislativa, el licenciado Rivera Cruz no está cobijado por la Cláusula de Inmunidad Parlamentaria por haber fungido como ex-investigador de la Comisión anterior que investigó los sucesos de Maravilla. **Reiteramos que el licenciado Rivera Cruz no tiene derecho a descubrir aquellos documentos relativos a aquellas defensas que la Opinión del Tribunal, con la cual coincidimos, ha determinado que son inmeritorias.**

Respecto a las alegaciones del licenciado Rivera Cruz de que la Comisión Especial no estaba legalmente constituida por falta de adecuada participación de los miembros de la minoría, el licenciado Rivera Cruz tiene derecho a descubrir, al amparo de lo resuelto en Silva v. Hernández Agosto, *supra*, y en Hernández Agosto v. Betancourt, *supra,* prueba pertinente y no privilegiada, de que en efecto no hubo adecuada participación de los miembros de la minoría.

Le corresponde, también, al licenciado Rivera Cruz, el derecho a descubrir prueba pertinente y no privilegiada relativa a su alegación de que la Comisión Especial, en una clara contravención a la Regla 2-B de su Reglamento, de la Regla 14.8 del Reglamento del Senado, y de la disposición constitucional que protege la dignidad, honra e inviolabilidad de la persona humana, incurrió en conducta y expresiones ofensivas y derogatorias a su persona.

De este modo establecemos un balance adecuado entre el derecho estatutario que asiste al imputado en virtud del Artículo 34-A del Código Político, su derecho constitucional a las garantías mínimas que ofrece el debido proceso de ley, y nuestro esquema de separación de poderes protegido por la Cláusula de Inmunidad Parlamentaria.

Aunque consistentemente hemos reconocido los amplísimos poderes que tienen la legislatura y sus comisiones. Hernández Agosto v. Ortiz, 115 D.P.R. 564 (1984); Romero Barceló v. Hernández Agosto, *supra*; Peña

Clos v. Cartagena Ortiz, *supra,* **no podemos abdicar nuestro deber constitucional de examinar si existen causas legítimas que justifiquen la incomparecencia del licenciado Rivera Cruz a la vista de la Comisión Especial.**

De igual modo, no podemos acceder a la solicitud del licenciado Rivera Cruz de tener acceso a todos los testigos y documentos requeridos, sin tomar en consideración, si los mismos son pertinentes a las defensas legítimas que le asisten. Determinada dicha pertinencia, debemos tomar en consideración el privilegio evidenciario consagrado en la Cláusula de Inmunidad Parlamentaria. Ante un reclamo de privilegio por la Asamblea Legislativa es necesario, que en el ejercicio de nuestra facultad constitucional de adjudicar la controversia entre las partes, examinemos si el reclamo del privilegio es legítimo y debe prosperar.

Al igual que la Opinión del Tribunal, sentimos honda preocupación al considerar que los procesos legislativos puedan convertirse en foros para que las partes ventilen su animosidad y hostilidad. Exhortamos a las partes envueltas en este recurso a que sus actuaciones sean ejemplo de prudencia, tolerancia y madurez. Solo así podemos salvaguardar los valores que animan nuestra sociedad democrática.

Por lo anteriormente expuesto, aunque concurrimos con la Opinión del Tribunal respecto al alcance y vigencia de la Cláusula de Inmunidad Parlamentaria, disentimos en cuanto a que considera que el procedimiento a seguirse en la vista de desacato es uno extraordinario en el cual no procede un descubrimiento de prueba amplio. Disentimos también de su determinación de modificar la sentencia del Tribunal de Circuito de Apelaciones y de adjudicar desde este estado apelativo cuáles documentos son descubribles.

En su lugar, confirmaríamos la sentencia del Tribunal de Circuito de Apelaciones y ordenaríamos al tribunal de instancia que con premura y diligencia determine **cuáles de los documentos y citaciones solicitados son necesarios para que el licenciado Rivera Cruz pueda**

**demostrar la existencia de una defensa legítima a su incomparecencia.** De estos documentos y citaciones pertinentes a dichas defensas, corresponde al tribunal de instancia determinar cuáles son descubribles y cuáles están cobijados por el privilegio de la Cláusula de Inmunidad Parlamentaria.


                    Federico Hernández Denton

                    Juez Asociado